In the Matter of the Application of ABEL E. BLACKMAR, GEORGE W. PALMER and EDITH Q. ROSS, as Executors of and Trustees under the Last Will and Testament of FRANKLIN QUINBY, Deceased, and of Said EDITH Q. ROSS, Individually, for a Determination as to the Construction and Effect of the Disposition of Property Contained in Said Last Will and Testament.

Surrogate's Court, Kings County, May 25, 1929.

*Elwell Palmer*, for the petitioners.

*William L. Sayers*, special guardian.

WINGATE, S.    This is a petition by the trustees under the will of Franklin Quinby for a judicial construction of the 5th paragraph of his will and the 6th and 7th paragraphs of a codicil thereto. These instruments were admitted to probate in this court on November 11, 1915, and letters were duly issued thereon.    The will in its entirety is not before the court but the paragraphs in connection with which the particular question of construction is raised read as follows:

"*Fifth.* I do give, devise and bequeath unto my executors hereinafter named and to their successors, all the rest, residue and remainder of my estate, both real and personal, of which I may die seized and possessed, of whatsoever kind or nature and wheresoever situate, to have and to hold the same in trust, however, for the following uses and purposes.

" A. I do direct my said executors to invest the same in securities approved by the Laws of the State of New York for the investment of trust funds, and at their discretion in the bonds of railroad companies and in stocks of similar companies which have paid dividends continuously for a period of five years before such investment or in industrial stocks dealt in on the New York Stock Exchange which have paid dividends for a like period of time, or in the stock of any national bank or of any bank or trust company organized under the Laws of the State of New York, hereby authorizing them to retain, in their discretion, any investment which I may have at the time of my decease, and to collect and receive the rents, issues, profits and income of the same and to pay the same to my wife Mary W. Quinby for and during the term of her natural life.

" B. I do authorize and direct my said executors to pay from time to time to my said wife, such portion of the principal of my said estate as she may request, provided, however, that the total amount of such payments to her from the principal of my estate shall not exceed one-third of such principal.

" C. I do authorize and direct my executors from and after the death of my said wife, in case my daughter Edith Quinby shall survive her, to keep my said estate invested as aforesaid, and

to collect and receive the rents, issues, profits and income thereof, and to pay the same to my said daughter during the term of her natural life. And I do hereby authorize and empower my said daughter in case she shall survive my wife, to dispose of the principal of said estate by an instrument in writing to be executed in the same manner as a last Will and Testament is required to be executed by the laws of the State of New York, and to take effect upon her death. In case my said daughter shall die without exercising the power of disposition so given her as aforesaid, then I direct that the principal of said estate shall be divided among her issue then surviving, share and share alike, *per stirpes* and not *per capita*, and in case she shall leave no issue her surviving, then among my next of kin as the class shall then be constituted.

" D. In case, however, my said daughter Edith shall die before my wife, then I do direct that my said wife shall have the power to dispose of the entire remainder of my estate by her Last Will and Testament, and in the event of her failure so to do, I do give said remainder to my next of kin as the class shall then be constituted.

" *Sixth.* I do hereby make, constitute and appoint my said wife Mary W. Quinby and Abel E. Blackmar and George W. Palmer to be the executors of this my last Will and Testament and trustees of the trusts herein and hereby created, and if during my wife's life, either of the executors should fail to qualify, die, resign, or in any way become incapacitated from exercising the duties of their said office, I do direct that such one of the following persons as shall be chosen by my wife shall be appointed executor in the place of the one so declining to act or becoming disqualified, namely: Edward C. Rice and Alfred Romer. And so long as my wife shall live, I do direct that no administrator with the will annexed, or substituted trustee shall be appointed except with my wife's approval. On the death of my wife leaving my daughter surviving, I appoint my daughter executrix in my wife's place. In case of the death, resignation or other incapacity to act of any other executor, after the death of my wife, I do direct his successor shall be chosen by my daughter from those persons named above, and that no administrator with the will annexed or substituted trustee be appointed after the death of my wife, except with my daughter's approval.

" *Seventh.* I do give to my said executors and trustees, and to their successors, full power to sell any and all real property of which I may die seized, at such time or times and upon such terms as may to them seem for the best interest of my estate, and full power to determine the securities in which my said estate shall

be invested during the continuance of said trust; and also to make such distribution of the same as shall be herein described. And I do direct that any computation of the amount of my estate made by said executors for the purpose of determining the amount of the payments on account of principal to my said wife shall be final and conclusive, and not subject to review."

Pursuant to the powers granted by the foregoing provisions, the trustees have invested the funds coming into their hands in a considerable variety of stocks and bonds, a majority of which are not within the provisions of section 21 of the Personal Property Law of the State of New York, as amended. They recently attempted to sell the holdings which they had purchased in the stock of the Equitable Trust Company of New York. This corporation refused to transfer the shares to the purchasers on the sole ground that it was not satisfied that the trustees possessed a power of sale under the provisions of the will above quoted, and that it had not yet been construed to give the trustees a power of sale under such circumstances.

The trustees feel that the cloud thus cast on their powers will greatly hamper them in their administration of the trusts, and pray that a construction of the will may be made which will adjudge that they have the power under the terms of the will to sell securities in which they may have invested the funds of the estate, or in which they may hereafter invest them. The question is of no small importance since it affects holdings in the hands of the trustees well exceeding $200,000 in market value.

It is, of course, fundamental that in construing the provisions of a will the primary aim of the court is to determine the intention of the testator (*Matter of Hughes*, 225 App. Div. 29; *Matter of Phelps*, 133 Misc. 450; *Matter of Purdy*, Id. 217), and if such intention can be discovered, it is paramount (*Matter of Smathers* 133 Misc. 812; *Matter of Manning*, Id. 695), and will not be affected by any rule of construction. (*Matter of Rooker*, 248 N. Y. 361, 364.) In determining such intention, courts are limited to the words which testator has himself used in the will (*Matter of Durand*, 250 N. Y. 45; *Matter of Dinkel*, 133 Misc. 868), but if there is any ambiguity, that construction should be given which will best carry testator's intention into effect. (*Matter of Buechner*, 226 N. Y. 440; *Nicholas* v. *Farmers' L. & T. Co.*, 224 App. Div. 540; *Matter of Kavanagh*, 133 Misc. 399.)

Let us now seek to ascertain the testator's situation, mental attitude and intention from the clauses of the will which are before the court.

His primary purpose was to provide support for his wife during

her life and after her death for his daughter. It is evident that he wished the sums available for such purpose to be as liberal as the resources of his estate would permit. This is shown not only by the discretion granted to his trustees to go outside of the class of strict trust investments authorized by statute into the category of so-called semi-business men's investments, but also by the fact, which is also important in another connection, to be noted later, he authorized his trustees to invade the principal for the benefit of his wife. The care shown in the selection of the trustees chosen to administer the fund indicates that the testator reposed great confidence in the individuals designated. It is apparent from the provisions of the will that testator was an experienced and careful investor, but in spite of that fact, or, perhaps, it should more properly be said in consequence of it, he gave his trustees the authority to dispose of any securities or property which might come into their hands at the inception of the trust.

In questions of the nature here presented it is reasonable to assume that the rules of judicial notice should receive liberal construction and that the court may be permitted to possess and exercise in a judicial capacity, at least a modicum of that general information and knowledge of affairs which is possessed by reasonably well-informed members of the community. The exercise of such general knowledge results in the conclusion that the class of investments here authorized is reasonably safe and sound only where those selecting them possess sound judgment, exercise vigilance in keeping in touch with the affairs of the corporations in which the investments are made, and possess the authority necessary to permit them to rid themselves of any of the investments whose further retention by the trust becomes unwise by reason of changing conditions.

It is advanced as an argument against a construction granting the trustees the power of sale over securities purchased by them that such a power is negatived by the fact that the trustees were expressly granted power to sell the real estate of which the testator died seized. Far from having such an effect, the juxtaposition, separated only by a comma, of the phrase " And full power to determine the securities in which my estate shall be invested during the continuance of said trust," would seem logically to lead only to a contrary result. The clause just quoted cannot reasonably be interpreted as referring to the powers of the trustees in the making of the investments, since this is fully dealt with in subparagraph " A " of paragraph " 5th." Paragraph " 7th " deals wholly with the powers of disposal by the trustees, so that the only reasonable interpretation of the last quoted phrase is to read

the " be " in the clause " be invested " in the sense of one of its synonyms such as " remain " or " stand."

But there is an additional reason which is more cogent, if possible, than those hitherto considered for construing testator's expressed intention as including the power claimed by the trustees. This is that if such power is denied, two of the expressly stated desires of the testator are conceivably impossible of fulfillment.

In paragraph " Fifth, B," he authorized a specified invasion of principal for the benefit of the wife. If testator's evident intent to grant the trustees full powers is to be held abortive, the compliance with this direction is rendered impossible. Furthermore, investment in preferred stocks is authorized provided they are in companies which have paid dividends continuously for five years. If the trustees have no power of sale, it is entirely conceivable that they might be forced to continue for three months, or any other usual dividend period, the stock of a company which had gone into the hands of a receiver. In view of these two considerations, it is the opinion of the court that the will should be construed to embody an implied power of sale, even were it not reasonably apparent that testator had intended to give such power in express language.

In any question of construction of a will, little aid can be gained from previous decisions since they are, in the vast majority of cases, interpretations of different phrases and grammatical constructions, and as was said by the Court of Appeals in *Matter of Bump* (234 N. Y. 60, 63): " Slight variations of phrase * * * or differences in arrangement may lead us to opposite results." A certain amount of general support may, however, be found for the construction here adopted in the following decisions: *Spencer* v. *Weber* (163 N. Y. 493, 502); *Washburn* v. *Benedict* (46 App. Div. 484, 489); *Dillaye* v. *Commercial Bank of Whitehall* (51 N. Y. 345, 352); *Toronto General Trusts Company* v. *Chicago, Burlington & Quincy R. R. Co.* (64 Hun 1; affd., 138 N. Y. 657).

The reasoning in the last cited case (see particularly 64 Hun, 8 *et seq.*), while there applied only to securities not within the strict legal rule which came into the hands of the trustee on the inception of the trust, would seem to be equally applicable to a case where investments by the trustees in non-legal securities were expressly authorized by the will. The court says (at p. 8): " On the other hand, the doctrine contended for by the plaintiff's counsel would, in many cases, lead to the result that when, as frequently happens, the instrument creating the trust contains no power of sale, the trustee has no duty to watch the securities in his charge, to see whether they are appreciating or depreciating

in value; and even if he sees that they are depreciating in value, and may eventually become worthless, he is wholly powerless, and must stand idly by until the trust fund has entirely disappeared. A doctrine, which leads to this result, cannot be a sound one * * *."

The court then concludes: " While we concede that the general rule is, as claimed by plaintiff's counsel, viz., ' that trustees may not sell or vary specific securities given in trust, nor securities left by a testator, in which he has himself invested the funds,' we think that this rule does not prevent trustees from converting wasting securities into those of a permanent character, and converting investments, that are not authorized by law, into such as are allowed by law."

If such a rule, granting trustees an implied power of sale as to securities outside the strict trust category, is sound in respect to investments made by the testator, which has been judicially determined by the Court of Appeals, no fundamental reason is readily apparent as to why it should not apply with equal force to cases where the making of such investments by the trustees has been expressly authorized and they have exercised the discretion given them. Courts and Legislatures may be inclined to favor certain classes of investments as tending in the usual case to offer greater security for the principal of trust funds, but if an individual evinces a different sentiment, it would seem to be rather the function of the court to be alert to aid in making such investments as safe and valuable as possible rather than to attempt to seize every possible opportunity to penalize the beneficiaries of the testator for his temerity in having dared to differ with the Legislature as to the way in which he wants his own property administered, when he is no longer capable of personally attending to it.

A paternalistic attitude by the three branches of government is, in many instances and relations, no doubt proper and laudable, but its extreme assumption in respect to the affairs of an individual who has demonstrated his sound judgment by his ability to amass a sufficient fortune or competence to make his material affairs a matter of moment would seem a matter of doubtful wisdom. The whole question really reverts to the basic principle of construction, that when testator's intention has been ascertained from his will, the court should do all that is reasonably possible to uphold and further that intention. It is the height of folly to assume that any testator who has evinced a desire that his trustees should be clothed with discretion to invest his estate in securities which, with changing conditions, may become semi-hazardous or even dangerous, should have intended that they should not also be clothed with a

discretion to dispose of such investments when their judgment dictates the wisdom of such a course.

It is no answer to this position to say that it is always possible for trustees to apply to the court for permission to effect a sale. Such a requirement is onerous and its frequent exercise would involve an unnecessary diversion of funds from the persons and objects to which they should be devoted, as well as tending, unnecessarily, to further clog the courts with questions which can best be determined by those chosen by the testator for the determination of such matters.

It is, therefore, found that the will in the instant case grants the trustees power to sell securities in which they may have invested the funds of the estate, or in which they may hereafter invest them.

Settle decree, on notice, accordingly.