In the Matter of the Petition of BANKERS TRUST COMPANY and Others, as Executors of ALVAH E. DAVISON, Deceased.

Surrogate's Court, Kings County, September 5, 1929.

*Thomas L. Zimmerman, Jr.,* for the petitioners.

*Joseph M. O'Shea,* special guardian for Kathryn E. Davison and others, infants.

WINGATE, S. Two questions of testamentary construction have arisen on the final accounting by the executors in this estate, one of which questions involves the propriety of ·the order assessing the transfer tax.

The will was admitted to probate in this court on February 29, 1928, and gives every evidence of having been drawn with great care by expert counsel.

The clause concerning which question has been raised is a most novel and interesting one, and reads as follows:

"*Sixth.* The remaining two-thirds (2/3) of all the rest, residue and remainder of my estate, both real and personal, of whatever kind and description and wheresoever situated, shall be divided by my executors into as many shares as I shall leave children me surviving, with one share to be equally subdivided among the children of any child of mine which may predecease me; one (1) such share shall be allotted by my executors to each child surviving me and one such subshare to each child of a deceased child, for the following purposes: Each such share and each such subshare I give, devise and bequeath unto my executors or the survivor or survivors of them, *In Trust Nevertheless* to hold the same or the proceeds thereof or the securities or property into which the same may become converted, to invest and keep the same invested and to collect and receive the income therefrom and to pay the same unto the child or child of a deceased child to which the respective share or subshare has been allotted in monthly or quarterly instalments of equal amounts, or as nearly equal as possible, during the term of the life of such child or child of such deceased child. Upon the death of each such beneficiary, I direct my trustees hereinafter named and the survivors or survivor of them to continue to hold the principal of the decedent's share or subshare in trust and to pay the income therefrom in equal parts unto the said deceased beneficiary's children, if any. As each of the last named persons shall die, I direct that the principal share or portion from which he has been receiving the income shall be divided in equal parts

among his children, if any. Should he leave none or should any child of mine or child of child predeceasing me die leaving no such child, then I direct that the respective share or portion be paid, unto the person or corporation in such manner, as the last beneficiary of the income of such share or subshare shall direct by duly executed and probated last will and testament and in default of such appointment or in so far as the same, if made, shall not be effectual, then such share or subshare shall be paid to the persons who shall then constitute the heirs-at-law of such last beneficiary, determined as in case of inheritance of real property under the law of the State of New York.

"If any of the persons for whose benefit I have directed by this paragraph that any share or subshare be held in trust be not in being at the time of my decease, then I direct that such person instead of receiving the income from such share or subshare, receive the principal thereof at the time when he would have otherwise begun to receive the income therefrom, and I give such share or subshare to such person absolutely."

The question for determination is whether this paragraph attempts to effect an illegal suspension of ownership within the rule laid down in section 11 of the Personal Property Law, which, so far as here material, reads as follows: "Suspension of ownership. The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a last will and testament, for not more than two lives in being at the death of the testator * * *."

The authoritative decisions construing this enactment have been so numerous that it is difficult to conceive of any abstract problem of construction which might arise under the statute which has not been adjudicated. Thus, it is unquestioned that a trust is invalid under the terms of which title is vested in the trustees for more than two lives in being. (*Matter of Durand*, 250 N. Y. 45; *Matter of Silsby*, 229 id. 396; *Matter of Colegrove*, 221 id. 455.) Furthermore, it is well settled that to be valid, the future estate must in every possible contingency terminate within the limit of such two lives, it not being sufficient that it may so terminate if certain possible eventualities result. (*Matter of Perkins*, 245 N. Y. 478; *Matter of Wilcox*, 195 id. 288; *Central Trust Co.* v. *Egleston*, 185 id. 23.)

Tested by these rules, does the "Sixth" paragraph of decedent's will in the instant case direct a possible illegal accumulation?

In the first paragraph he creates a trust for each of his children and for the life of each grandchild whose parent predeceased the testator. The next direction is, in substance, that upon the death of each such life beneficiary the trust fund shall be divided into as many parts as the life tenant had children and one such part held in trust for each such child. This would result in a holding of the principal fund composing such secondary trust for two lives and only two, since there is a direction that upon the termination of the second life on which each final portion of the trust is limited, there shall be a final payment over of the corpus. Had testator stopped at the end of the first paragraph of subdivision " Sixth," the trust, or at least parts of it, would unquestionably have been bad, for although this paragraph limited the duration of the suspension of the power of alienation of each ultimate portion of the corpus of the trust to two lives, it did not in this paragraph limit it to lives in being at the time of testator's death, and the court would foresee that that might happen which has actually happened, namely, that children coming within the testator's description of limiting lives might be born after his death. The testator, however, was evidently aware of the limitation of not more than two lives *in being* as the measure of the trust period and that it might be that the provisions made would exceed this limitation if there should be children, grandchildren or great grandchildren born after his death.

To overcome this, testator provided in the second paragraph of subdivision " Sixth " qualifications of the earlier provisions of the subdivision. These qualifications affect both the " shares " and " sub-shares " therein referred to, and substitute outright gifts in place of life estates for all remainders which, under the wording of the first paragraph, might accrue to those who were not in being at the time of his death, thus stopping, as to such afterborns, the chains of successive life estates at the end of the last life in being at testator's death. Thus limited, the trust periods provided by the subdivision when read in its entirety could in no event exceed two lives in being, and the trusts beyond such point are expunged by the saving clause of the second paragraph with the same effect as if they had never been inserted therein.

Counsel seem somewhat exercised on the subject of whether the life estates to the grandchildren of testator who were alive at the time of his death are vested or contingent. If they can be deemed vested at all, they are certainly " vested subject to being divested," which my learned colleague, Surrogate FOLEY, ably argues is merely contingent. (*Matter of Sperling*, 133 Misc. 834.) Certainly it is true that the gift over after each life estate is a gift to a class,

namely, the children of the first life beneficiary, it being testator's evident intention that all persons answering that description at the time of the death of the particular life tenant should share, either as succeeding life tenants or, if born after testator, as ultimate remaindermen of a moiety of the corpus of the trust.

The operation of this paragraph of the will may be well demonstrated by the case of Harold M. Davison, one of the testator's sons. At the time of testator's death he had five living children, and one has been born since testator's death. If at the son's death all these children are living and no others have been born, the corpus of the son's trust will be divided into six parts, the first five of which will be held in trust for the five grandchildren born prior to testator's decease and the sixth paid outright to the afterborn. If one of the prior-born children should predecease the son and all the others should survive him, the result would merely be to eliminate the decedent and to divide the trust in a similar manner among the survivors, those born prior to testator's death receiving life estates and the afterborn taking outright. It is clearly a case where testator intended that the deferred beneficiaries " must live to win."

There remains for consideration on this phase of the problem only the question of the death of a primary or secondary life tenant without issue, which is the phase of the matter involving the propriety of the transfer tax assessment. If any life tenant leaves issue, such issue will take under the terms of the will, the taking being either in trust or outright, depending on the considerations just discussed. Failing such issue, however, the life tenant is given a power of appointment, the manner of exercise of which cannot presently be determined and which, conceivably, may be in favor of a person in the five per cent class. Thus it is entirely possible that any one of the present life beneficiaries might have no children living at his or her decease (Ruth D. Stewart has none at the present time) and that he might exercise the power of appointment in favor of a stranger. It follows, therefore, that the remainders are presently taxable at the highest rate. (Tax Law, § 230; *Matter of Cole*, 235 N. Y. 48; *Matter of Kenly*, 133 Misc. 718; *Matter of Sperling, supra.*)

The final request for construction concerns the second and third subdivisions of the paragraph of the will numbered " Eighth," reading as follows:

" *Eighth*. I authorize and empower my Executors and Trustees, or the survivors or survivor of them, * * *

" (2) At the risk of my estate and without responsibility to my Executors and Trustees, to continue and, in their discretion,

to turn over as part of the shares of my estate hereinbefore given, devised and bequeathed and in the erection of the trusts herein created, any real estate, stocks, bonds or other instruments in which, at the time of my death, any portion of my estate shall be invested, although the same shall not be of the character prescribed by law for legal trust investments.

" (3) To dispose of, call in or change, any and all investments, but all re-investments which shall be made by my Executors or Trustees shall be limited to such securities as shall be prescribed by law for New York savings banks (but this shall not limit or modify the power and authority given to my Executors and Trustees in Article Eighth)."

The particular question presented by the executors and trustees is " whether or not they are authorized thereby to exercise rights to subscribe to securities held by them which were owned by the testator and which are not of the character prescribed by law for legal trust investments, from the proceeds of the sale of part of such rights."

Under the phraseology of the will, it seems apparent that whereas testator was willing to permit the executor and trustees to hold the investments which he had himself purchased, he was not willing to grant them discretion to invest on their own account other than in securities authorized by law. It would have been quite possible for him, had he desired to do so, to have made an exception in his will to the effect that the executors should reinvest only in legal securities except that they might increase non-legal holdings in which he had invested in his lifetime. He did not give such discretion. Although he might personally have been willing to run certain risks by investing a limited amount in speculative or semi-speculative securities, *non constat* he would have been willing personally to invest a greater sum or have his trustees do so. A right to subscribe to stock is just what the term implies, namely, the privilege of entering into a contract to purchase one or more shares of the specified stock at a given price, usually less than the market price. It contemplates an additional contribution of funds to the corporate enterprise and involves an act of investment. In the question propounded, the executors seem to imply that this act is varied by the source from which the funds for completion of the new contract of acquisition are derived. Such a distinction rests on no sound basis. The proceeds of the sale of any such rights, on receipt, differ in no way from the proceeds of sale of any other asset of the estate and are subject to the general rules of investment laid down by the will.

Proceed accordingly.