In the Matter of the Petition of BROOKLYN TRUST COMPANY to Render and Settle Its Final Account as to the Trust Created for the Benefit of EMILIE K. ROSSITER, Deceased, and Its Intermediate Account for the Trusts Created for the Benefit of MARIE LOUISE ROSSITER and HELEN WICKES ROSSITER, Respectively, in and by the Will of FRANK P. ROSSITER, Deceased.

Surrogate's Court, Kings County, September 25, 1929.

*Cullen & Dykman* [*Ralph W. Crolly* of counsel], for the petitioner.

*White & Case* [*Lyndon Arnold* of counsel], for Bankers Trust Company, as executor, etc., of Van Wyck Rossiter, deceased.

*Carrington G. Arnold*, for Edward L. Rossiter and others.

*Poore & Webster* [*John G. Poore* of counsel], for Lucien T. Rossiter.

*Tompkins & Maurice* [*Millard F. Tompkins* and *Raiemond E. Dee* of counsel], for C. Lawrence Rossiter, Jr., and another, as executors, etc., of Clinton L. Rossiter, deceased.

*Frederick A. Keck*, special guardian.

WINGATE, S. This is an application for a construction of certain portions of the will of Frank P. Rossiter, made in connection with the petition for the judicial settlement of the accounts of the Brooklyn Trust Company as trustee.

The testator died on April 24, 1913, possessed of a considerable

estate and leaving a will which was duly admitted to probate in this court on July 10, 1913.

The present controversy arises respecting the proper construction to be placed on the item of this will which is numbered " Fourth " and which, so far as here material, reads as follows: " I give, devise and bequeath all the rest residue and remainder of my estate, wherever situate, to The Long Island Loan & Trust Co., in trust however for the following purposes. To divide the same into as many parts as may be necessary to secure an income hereinafter provided, for Emilie K. Rossiter, widow, and the unmarried daughter or daughters of my brother Walter K. Rossiter, if they shall survive me; to invest the said part or parts and keep the same invested and to pay the net income from one of said parts to Emilie K. Rossiter during her natural life; to pay the net income from another of said parts to Marie Louise Rossiter, during her natural life; to pay the net income from another of said parts to Helen Wickes Rossiter; and upon the death of any of the said beneficiaries, said trust which was created for her benefit shall cease and determine; and I give and bequeath all of said fund or part so invested together with the gains, increase and unpaid accumulated income thereon to my brother Clinton L. Rossiter, absolutely, or if he shall not be living at that time, to his Executors to be disposed. of in accordance with the terms of the last Will and Testament of my said brother, Clinton L. Rossiter."

At the time of testator's death, both Emilie K. Rossiter, one of the life tenants of the trusts created by the foregoing paragraph, and Clinton L. Rossiter, testator's brother, were living. The brother predeceased the life tenant, leaving a will which was duly admitted to probate in this court on November 20, 1925.

So far as here material, this will provided as follows:

" *Fourth.* I give and bequeath the entire clear income, interest, rents and profits derived from my estate, real and personal, that I may hereafter acquire and die possessed of or be entitled to, unto my wife, Jessie G. Rossiter, so long as she shall live.

" *Fifth.* Upon the death of my said wife, Jessie G. Rossiter, I give, devise and bequeath all of my said residuary estate, real, personal and mixed, unto Winton G. Rossiter and Brooklyn Trust Company in trust, nevertheless and for the following uses and purposes, that is to say, I direct my said Trustees to divide my said estate into four equal parts, authorizing the retention of any or all of the securities and investments that may come to them and to invest the same and keep the same invested and to pay over the rents, income and profit thereof, one of said equal parts to each of my children, Marjorie Rossiter Read, Elizabeth Rossiter,

W. Winton G. Rossiter and C. Laurence Rossiter, Jr., if living at her death, or if either of said children shall die before my wife, said income to be paid to their issue in equal parts, or if said child shall die not leaving wife or husband, and without issue, his or her part to go absolutely share and share alike to my children living, and upon the death of each child, the said trust shall cease and determine and the entire principal thereof remaining to be paid over as may be directed by the will of said child."

Jessie G. Rossiter, the life tenant under the will of Clinton L. Rossiter, died March 20, 1928, and Emilie K. Rossiter, the life tenant under the will of Frank P. Rossiter, died in January, 1929.

The question for determination arises upon that portion of item " Fourth " of Frank P. Rossiter's will giving the remainder upon the death of the life tenant " to my brother, Clinton L. Rossiter, absolutely, or if he shall not be living at that time, to his executors to be disposed of in accordance with the terms of the last will and testament of my said brother, Clinton L. Rossiter."

It is contended, on the one hand, that this language vested an absolute remainder estate in Clinton, so that its manner of disposition by his will became immaterial. On the other hand, it is argued that the effect of this language is to give Clinton merely a contingent estate conditioned on his surviving the life tenant, plus a power of appointment by will. Since under such a construction the two wills would have to be read together, the result might be an intestacy as to the residue, because Clinton's will set up estates for two lives which, added to the trust estates for the life beneficiaries under the Frank P. Rossiter will, would result in a suspension of the power of alienation beyond that permitted by section 42 of the Real Property Law and section 11 of the Personal Property Law.

While counsel have cited many decisions of more or less relevancy on the problem here propounded, it is elementary, as was recently pointed out by the Court of Appeals (*Matter of Bump*, 234 N. Y. 60, 63), that little light is cast on the correct interpretation of the language in one will by decisions construing another. (*Matter of Quinby*, 134 Misc. 296.) In each case resort must, in the final analysis, be had to the familiar primary principles that the aim of the court is to determine the intention of the testator (*Matter of Hughes*, 225 App. Div. 29; *Matter of Phelps*, 133 Misc. 450; *Matter of Purdy*, Id. 217), and if such intention can be discovered it is paramount (*Matter of Buttner*, 243 N. Y. 1; *Matter of Farkouh*, 134 Misc. 285; *Matter of Smathers*, 133 id. 812; *Matter of Manning*, Id. 695), and will not be affected by any rule of construction (*Matter of Rooker*, 248 N. Y. 361); that in determining such

intention, courts are limited to the words which testator has himself used in the will (*Matter of Durand*, 250 N. Y. 45; *Matter of Dinkel*, 133 Misc. 868); but if there is any ambiguity, that construction should be adopted which will best carry testator's intention into effect. (*Matter of Buechner*, 226 N. Y. 440; *Nicholas v. Farmers' Loan & Trust Co.*, 224 App. Div. 540; *Matter of Kavanagh*, 133 Misc. 399; *Matter of Quinby*, 134 id. 296.)

That there is an ambiguity in the present language is evident from the earnestness with which two distinguished arrays of counsel argue that differing meanings be read from the phraseology employed.

Were it not for the evident earnestness of counsel, it would seem to the court that the basic intent of testator in the disposition in question was apparent to the effect that after the death of the life tenants, the remainder was to go to his brother, Clinton, "absolutely." By way of excess caution, and as further evidence of his desire that Clinton's estate was to be the absolute owner of the remainder, even in case of his predecease, he added "or if he shall not be living at that time, to his executors." The following words are merely descriptive of the course of disposition of the remainder after it should come into the hands of the executors, and can certainly not reasonably be construed as cutting down the previous absolute vested estate which Clinton certainly received. To some minds, no doubt, the intent of testator might be thought to have been more clearly stated had he stopped with the absolute gift, but to this court it appears that the following phraseology, far from casting doubt on the earlier clearly expressed intention, emphasizes that intention by demonstrating the desire that Clinton should benefit by this beneficence whether he lived or died.

Whereas this court is not prepared to state that under no circumstances could language be used which would be construed as giving a power of appointment as to residue following an absolute gift, it is difficult to conceive of such a wording, the usual and apt manner to effect such a disposition being to give such a power on the termination of a bequest of a mere life estate.

The view here adopted is reinforced by every applicable canon of construction. It prevents any intestacy which has frequently been held to be one of the most fundamental rules of construction. (*Clark v. Cammann*, 160 N. Y. 315; *Nicholas v. Farmers Loan & Trust Co.*, 224 App. Div. 540; *Matter of Potter*, 133 Misc. 17; *Matter of Foster*, Id. 222; *Matter of Kavanagh*, Id. 399; *Matter of Manning*, Id. 695.)

It is a holding that the estate in Clinton was vested which is uniformly favored. (*United States Trust Co. v. Taylor*, 193 App. Div. 153, 158; affd., 232 N. Y. 609; *Mersereau v. Katz*, 197 App.

Div. 895, 898; affd., 233 N. Y. 540; *Foote* v. *Peaslee*, 206 App. Div. 329, 332; affd., 237 N. Y. 586.)

Finally, it is in accordance with the long-established principle that an absolute gift " will not be cut down by subsequent language not equally clear." (*Matter of Rooker*, 248 N. Y. 361, 364; *Roseboom* v. *Roseboom*, 81 id. 356; *Tillman* v. *Ogren*, 227 id. 495, 505.) As is said by the Court of Appeals in the case last cited: " Where there is an absolute gift of real or personal property, in order to qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as imperative."

It is, therefore, found that the remainders of the trusts under item " Fourth " of the will of Frank P. Rossiter were absolutely vested in Clinton L. Rossiter at the death of the testator and, therefore, passed under Clinton's will in a manner identical with that of any other choses in action owned by him at his death.

Proceed accordingly.