In the Matter of the Estate of CHARLES JAMES CHAPMAN, Deceased.

Surrogate's Court, Kings County, January 25, 1939.

*Cullen & Dykman* [*Francis A. Booth* of counsel], for the Brooklyn Trust Company, as executor and trustee, petitioner.

*Thomas P. Mackey*, for Ruth Willets Dally, Hewlett Rutter Dally and Louisa Beatrice Dally, remaindermen.

*Sullivan & Cromwell* [*S. Pearce Browning, Jr., Robert E. Houston, Jr.,* and *Albert Andrews* of counsel], for Maud Empson Gisborne, life beneficiary.

*Hughes, Richards, Hubbard & Ewing* [*Harold L. Smith* and *Ethan Allen Hitchcock* of counsel], for Elizabeth Empson Chapman, life beneficiary, and Edward Frederick Chapman, distributee.

*Edmund S. Bergen*, for Katherine Nichols Woolston, remainderman.

*Harry Wolff*, special guardian for Robert Louis Wright and Dorothy Elizabeth Wright, infant legatees.

WINGATE, S. The present testator attempted the ultra-hazardous undertaking of acting as his own testamentary draftsman, with the usual result that the disposition of the main body of his estate is attacked as invalid. That such attack is justified is self-evident from a perusal of his directions, the only question being as to the extent of such invalidity.

Certain of the next of kin who would not otherwise benefit, contend for total invalidity of the trust erected by the " sixth " item. The court cannot concur in their contentions. Their argument is predicated on the fact that the language of the will is susceptible of an interpretation that a single trust only was erected, with the income payable to each of four persons for life. The primary intention of the testator was that each of these named individuals should, during his continued life, receive the current return from one-fourth of his residuary property, and this intention may be effectuated.

The law, as presently administered, has happily advanced beyond that rigid formation which, under pain of total extinction, required the testator to express his wishes by an " open sesame " formula of words and has adopted the scriptural viewpoint that " the letter killeth, but the spirit giveth life " (2 Cor. 3:6). (*Matter of Horner*, 237 N. Y. 489, 496; *Vanderpoel* v. *Loew*, 112 id. 167, 177, 180; *Wells* v. *Wells*, 88 id. 323, 333; *Savage* v. *Burnham*, 17 id. 561, 571.) As was observed by Judge FINCH in the *Vanderpoel* case (p. 177) in answer to a similar contention: " we are in duty bound to reject that construction if any fair and reasonable interpretation of the testator's language enables us to save his dispositions and give his will effect," or, as is said in *Matter of Lyons* (271 N. Y. 204,

208): " We must endeavor to carry out as far as possible the intent of the testatrix."

The primary purpose of the testator, as has been said, was to give the income from one-fourth of the residue of his estate to each of four named persons, who, for convenience of discussion will be designated as A, B, C and D. His secondary desire was that upon the successive deaths of each of these individuals, the income which the particular decedent had enjoyed during life, should be payable to the remaining survivors in equal shares until the death of the longest liver. The primary use for each of the four persons is valid, as is the secondary use of the principal of the first to die of the three survivors. It is only after two deaths that an infringement of the statute restricting restraint on alienation to two lives in being (Real Prop. Law, § 42; Pers. Prop. Law, § 11) is encountered.

Assuming that the primary beneficiaries die in alphabetical order, the following results will ensue: At the start there is a valid trust of one-fourth of the residuary estate for each of the individuals designated A, B, C and D. Upon the death of A, one-third of the corpus of his trust is to be added to each of the trusts for B, C and D. Upon the death of B, his trust corpus will, therefore, be composed of his own initial share and of one-third of that originally held for A. The former may be held for an additional life. The latter may not. It follows, therefore, that on the death of B, the second to die, his original principal will be added in equal parts to the trusts for C and D, but the principal derived from A's trust may no longer be held in trust and must devolve in a manner other than that expressly directed.

The results occurring on the death of C, the third to die, are similar. His corpus is then composed of his own initial capital, of one-half of that enjoyed by B, and one-third of that enjoyed by A. The first named may, as directed, be added to the trust for D, but the last two, namely, the parts derived from the trusts from A and B, may not, and will devolve as undirected property.

It follows that, during his continued life, the principal funds enjoyed by D will be composed of his own quarter share of the residue, the life share of C, and half of the share of B and one-third of the share of A, and on D's death this will be equally divided among the then surviving nieces and nephews named as the remainder distributees.

It follows from the foregoing that invalidity of direction affects only the following, on the death of the second life beneficiary to die, one-third of the corpus dedicated to the life use of the one first to die; and on the death of the third life beneficiary to die,

one-third of the corpus dedicated to the one first to die and one-half of that dedicated to the life use of the one second to die. There is, therefore, a partial intestacy as to two-thirds of the first quarter and one-half of the second.

The mode of devolution of these invalidly directed parts remains for consideration. The gift of the remainder as directed by the will is twofold. Two sums of $100 each are payable in all events to named grandchildren of Frank Wright.

These remainders became absolutely vested on the death of the testator. The balance is distributable in equal shares among the survivors at the time of final distribution of seven named nieces and nephews. That the interests of these persons became contingently vested only on the death of the testator, and were subject to divestment in the event of their respective deaths prior to the arrival of the time for possessory enjoyment, is obvious from the final sentence of the item in question.

It is only in respect of remainder gifts which are absolutely vested in every possible contingency that acceleration may occur. (*Matter of Terwilliger*, 135 Misc. 170, 183, 184; affd., on opinion of this court, 230 App. Div. 763, and authorities cited; *Matter of Drake*, 153 Misc. 691, 693; affd., 246 App. Div. 758; *Matter of Lyons*, 154 Misc. 368, 371; affd., 271 N. Y. 204; *Matter of Moores*, 155 Misc. 471, 474; affd., 248 App. Div. 738; *Matter of Burling*, 148 Misc. 835, 844; *Matter of Mann*, 138 id. 42, 46; *Matter of Wickham*, 139 id. 729, 731; *Matter of Kramer*, 153 id. 606, 608; *Matter of Kerwin*, 161 id. 364, 366.) This condition exists in respect of the two $100 gifts. It is absent in the other remainder gifts. The former may accordingly be accelerated, the latter may not.

It follows that the composite direction of item " 6 " of the will is valid except that upon the death of the second to die of the four named life beneficiaries, one-third of the corpus dedicated to the life use of the first to die may no longer be held in trust. Two hundred dollars thereof will then be payable to Robert and Dorothy Wright and the balance will devolve in intestacy to the statutory distributees of the decedent. (*Morton* v. *Woodbury*, 153 N. Y. 243, 256; *Wright* v. *Wright*, 225 id. 329, 340, 341; *Matter of Weil*, 151 Misc. 841, 848; affd., 245 App. Div. 522; *Matter of McCafferty*, 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Green*, 160 Misc. 490, 492.) Likewise, on the death of the third named life beneficiary one-third of the original principal of the first to die and one-half of that of the second, will devolve as intestate property.

Enter decree on notice in conformity herewith.