In the Matter of the Appraisal under the Transfer Tax Law of the Property of HARRIET L. DAVISON, Deceased.

Surrogate's Court, Kings County, September 11, 1930.

*Thomas L. Zimmerman, Jr.,* for the executors.

*Harry M. Peyser* [*Seth T. Cole* of counsel], for the State Tax Commission.

WINGATE, S.   This is an appeal by executors from the *pro forma* order of this court entered on January 20, 1930, assessing the transfer tax in this estate.   The sole contention advanced as a basis for the appeal is the alleged unconstitutionality of the 4th subdivision of section 220 of article X of the Tax Law (Laws of 1909, chap. 62, as amd.), which reads as follows:

" 4. Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property, made either before or after the passage of this chapter, such appointment

when made shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will, except that where the donor was a resident and the donee, at the time the appointment takes effect, is a nonresident, the property to which the appointment relates shall be taxable as having been transferred in the estate of the donor."

The facts giving rise to the present controversy may be summarized as follows:

Alvah Davison died a resident of Kings county on February 7, 1928. His will was admitted to probate in this court on the 21st day of February, 1928. This will, which was the subject-matter of an earlier proceeding for construction in this court (134 Misc. 769), provided by its " Fifth " item that one-third of the residue of his estate should be held in trust for his wife for life. It then directed: " Upon the death of my said wife, to convey, transfer and pay over the principal of the trust fund so held for her benefit, unto the person, persons or corporations, in such manner as my said wife shall direct by her duly executed and probated Last Will and Testament * * *." It further provided for a gift over in the event of the widow's failure to exercise this power of appointment.

The net estate of Alvah Davison, as set forth in the report of the transfer tax appraiser therein, amounted to $786,334.61. According to statements which appear in the memorandum for the executors on this appeal, but is not discoverable from the record, the value of the property as of the date of Alvah Davison's death which passed into the trust for the widow and thus became subject to her power of appointment, was about $267,000.

The widow, Harriet L. Davison, died on the 29th day of March, 1929, a resident of the county of Kings, her will being admitted to probate in this court on the tenth of the following April. By the " Eleventh " item of her will she expressly executed the power of appointment given her under the will of her husband in favor of her children. The value of such appointed property as of the date of death of Harriet L. Davison was fixed at $357,340.03 by the transfer tax appraiser and this value is conceded to be correct.

If the statement of value of the trust property at the time of the death of the donor, contained in the memorandum of the executors, is assumed to be correct, it is apparent that the value of the appointed property enhanced to the extent of about $90,000 between the date of death of the original testator and the date of death of the donee of the power granted by his will.

The transfer tax appraiser, pursuant to the provisions of subdi-

vision 4 of section 220 of the Tax Law, correctly assessed the tax in her estate on the basis of its valuation existing at her death.

It is the contention of the executors that, had Mrs. Davison been a non-resident of the State of New York at the time of her decease the tax would have been assessed on the valuation of the property at the time of Mr. Davison's death, which, as noted, is claimed to have been about $90,000 less, and that, therefore, the section of the Tax Law cited is an improper discrimination against residents of the State of New York and consequently invalid as an infringement of paragraph 1 of section 2 of article IV, and section 1 of the Fourteenth Amendment of the Federal Constitution.

The two constitutional provisions in question are as follows:

Article IV, section 2, 1st paragraph: " The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

Fourteenth Amendment, section 1: " All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The contention of the appellants, as stated in their brief, is that " Subdivision 4 of Section 220, Article X of the Tax Law is violative of these two provisions of the Constitution, for the following reasons:

" Because of the fact that it discriminates between the estates of those who die resident of the State of New York and those who die non-resident of the said State. Harriet L. Davison was a resident of the State of New York at the time of her death, the property passing under the power of appointment pursuant to said Paragraph 4 of Section 220, Article X of the Tax Law was taxed as though it passed in her estate at the date of her death and the valuations of the said property were made as of the date of her death. Had Harriet L. Davison been a non-resident of the State of New York at the time of her death, the property would have been taxed under the said Section 220, Paragraph 4, Article X, as having been transferred in the estate of the donor, i. e., the estate of Alvah Davison, deceased, and the value of the transferred assets would have been fixed as of the date of Alvah Davison's death."

In order to succeed on this appeal, the appellants must sustain the affirmative of three propositions:

*First.* That the necessary and inevitable construction of subdivision 4 of section 220 of the Tax Law is to impose a greater tax

in the case at bar than would have been imposed had the decedent died a resident of a State other than New York;

*Second.* That the imposition of such greater tax is inhibited by the constitutional provisions invoked; and

*Third.* That the appellants are within the class permitted to raise the objection.

These questions will be considered in order.

It is of course primary that every presumption is to be indulged " in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law " (*People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553, 558; *Willis* v. *City of Rochester,* 219 id. 427, 432. See, also, *Bradley* v. *Richmond,* 227 U. S. 477; *New York Cent., etc., R. R. Co.* v. *U. S.,* 212 id. 481) and are shown to be unconstitutional *beyond a reasonable doubt.* (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1, 2; *Lewkowicz* v. *Queen Aeroplane Co.,* 207 id. 290, 294. See, also, *United States* v. *United Shoe Mach. Co.,* 234 Fed. 127.) Consequently, " where two constructions of an act of the legislature are possible, one of which renders the act unconstitutional, and the other of which renders the act constitutional, that construction will be given which holds the act constitutional." (*People ex rel. Simon* v. *Bradley,* 207 N. Y. 592, 610. See, also, *Plymouth Coal Co.* v. *Penna.,* 232 U. S. 531.)

Approaching a construction of the statute, we are met by appellants' citation of article 94 of the Regulations of the State Tax Commission which they insist to be applicable to the circumstances here present, and which, if such be the fact, would seem to indicate that the administrative regulations of the Commission are in accord with appellants' contentions in this respect. The applicability of these regulations to the facts of the instant case is denied by the Tax Commission. A determination of the question is not deemed worthy of the effort.

It is primary that the construction of a statute is a matter for the courts whose jurisdiction in this regard cannot be ousted by administrative or executive authority (*Matter of O'Connor* v. *Emerson,* 196 App. Div. 807, 810; affd., 232 N. Y. 561), and, consequently, whereas more or less weight should, unquestionably, be given to department interpretation, nevertheless " the court is the final arbiter as to the construction to be given to this act, and in discharging that function should, if after mature deliberation it concludes that the position of the department is untenable, disregard its interpretation." (*Matter of Armitage* v. *Board of Education,* 122 Misc. 586, 591; affd., 210 App. Div. 812; affd., 240 N. Y. 548.)

It follows, therefore, that " an act must be construed in view

of all of its provisions and also in view of the purposes and intent of the legislature in its enactment." (*New York Railways Co.* v. *City of New York*, 218 N. Y. 483, 490.)

The general subject-matter of the paragraph now under consideration was added to the former Tax Law (Laws of 1896, chap. 908) by chapter 284 of the Laws of 1897. The original wording then inserted is identical with that of the present paragraph, down to the final clause beginning with the word " except " in the present act. The 1897 enactment, however, contained an additional provision for taxation in the event of failure of the donee to make the appointment, such tax being in the estate of the donee of the power. As will be noted later, this addition was repugnant to the basic principles of taxation upon transfers of decedents' properties.

The wording thus enacted was continued without change in the revision of section 220 of the Tax Law effected by chapter 368 of the Laws of 1905 and was again re-enacted without change in the revisions made by chapter 310 of the Laws of 1908 and chapter 706 of the Laws of 1910. Chapter 732 of the Laws of 1911, while continuing the first clause, eliminated the provisions respecting tax on failure to exercise the power of appointment and the paragraph was continued in this form in chapter 664 of the Laws of 1915 and chapter 626 of the Laws of 1919.

With the revision effected by chapter 430 of the Laws of 1922, an additional clause was added, but it would be fruitless labor to consider the effect of this addition, since it was eliminated by chapter 143 of the Laws of 1925 and the statute restored to its simple form. In the following year the addition challenged in the case at bar was made (Laws of 1926, chap. 357) and has continued unchanged until the present time.

This history of the statute indicates the uniform intent of the Legislature to impose a tax upon the succession to property passing pursuant to a power of appointment. The difficulty which was experienced in practice, however, and which led to the various changes which have been noted, was due to the fact that the donee of the power, in many cases, was a non-resident over whose estate our courts had no direct jurisdiction. It would manifestly have been inequitable to permit the appointees of a non-resident donee to escape the taxation payable by residents, or to allow a testator in the grant of the power, or the donee, in its exercise, to defeat our laws by such a simple expedient. The estate of a non-resident donee was beyond the authority of the State, but the property which was the subject-matter of the appointment, and, therefore, of the transfer, was still subject to its authority.

The principle is familiar that in the construction of a will purporting to exercise a power of appointment, its provisions must be read in conjunction with the will granting the power. (*Matter of Terwilligar*, 135 Misc. 170, 174, and cases cited; affd., 230 App. Div. 763.) The reason for this is, of course, because in reality the transfer is of property which was, to some extent at least, a part of the underlying estate. Since the underlying estate, being that of a resident, was within the jurisdiction of our Legislature and courts, and since, from the nature of the rights created by the grant of a power of appointment, it must continue in such jurisdiction until the exercise of the power and the distribution pursuant thereto, a simple method of frustrating the evasion of the tax by a non-resident donee of the power was adopted by the Legislature. In effect, a lien was impressed upon the property still remaining within its jurisdiction in the underlying estate.

All this is, no doubt, conceded by the appellants, but they contend that the result of the wording added by the 1926 amendment was to make the property appointed taxable as if it had been transferred directly to the appointees by the donor of the power, in cases where the donee died a non-resident.

No authority is cited for such a construction, and in the opinion of the court it is not only not the inevitable meaning of the words used but actually does violence to the apparent intent of the Legislature when the enactment is construed in the light of the history and development of section 220 of the Tax Law.

Appellants cite two and only two general authorities to sustain their contention on this phase of the subject. These are *Matter of Penfold* (216 N. Y. 163) and *Matter of Hubbard* (234 id. 175). Neither bears directly upon the point at issue and neither involved the exercise of a power of appointment. The general doctrines enunciated by these determinations are stated in their respective opinions as follows:

" The tax (so called) is the toll or impost appropriated to itself by the state for or in connection with the right of succession to property. It accrues, therefore, at the same time that the estate vests, that is upon the death of the decedent." (*Matter of Penfold*, 216 N. Y. 163, 167.)

" We must not, however, lose sight of the fact that the valuation for purposes of taxation is to be made as of the date of death." (*Matter of Hubbard*, 234 N. Y. 175, 180.)

Perhaps there is no practice contributing more greatly to confusion in legal conception or more fruitful of litigation than that of wresting a line or phrase from its context in an opinion and attempting to apply it to an entirely dissimilar set of facts. Unquestionably,

any transfer tax accrues at the " date of death " and the estate vests " upon the death of the decedent," but in applying this rule to a case involving a power of appointment, these phrases must be read in conjunction with the language of the court in *Matter of Davis* (149 N. Y. 539, at p. 546): " It has been often held by this court that the tax imposed is not a tax on property, but upon the right of succession, and, hence, the true test of value by which the tax is to be measured is *the value of the estate at the time of the transfer of title.*" (Italics not in original.)

This was reiterated in *Matter of Sloane* (154 N. Y. 109, at p. 113).

Analyzing the legal situation existing upon the taking of property by the appointee of the donee of a power, it is unquestionable that such appointee takes the appointed bequest by virtue of the exercise of the power by the donee. On the death of the donor of the power, nothing passes to such appointee. He has no estate, either vested or contingent, while the estate in the property, subject to the exercise of the power of appointment, is vested in the alternate legatees of the original testator, if any, or his heirs or next of kin, subject to be divested by the exercise of the power by the donee thereof. (Real Prop. Law, § 41; *Matter of Haggerty*, 128 App. Div. 479; affd., 194 N. Y. 550; *Crackanthorpe* v. *Sickles*, 156 App. Div. 753; *Connolly* v. *Connolly*, 122 id. 492.) In other words, the right of the appointee to take arises solely in consequence of the testamentary exercise of the power by the donee thereof, and under the rules above noted its value must be determined as of the date of the transfer of title to him.

All this was firmly established law at the time the Legislature enacted the questioned addition to section 220 of the Tax Law in 1926, and must be held to have been within its contemplation.

It should be recalled, however, that whereas the rights of the appointee of the power arise solely by virtue of the exercise of the power by the donee thereof, nevertheless the property affected thereby is at the time of its exercise still in the estate of the donor of the power, and if the donee is a non-resident, this, and this only, is within the jurisdiction and subject to the taxing power of this State.

Under the universally accepted rule, the tax is to be based upon the value of the estate, that is the property passing to the appointee, at the time of such transfer of title to him, which is upon the death of the donee who has exercised the power of appointment and this is so whether the donee is a resident or a non-resident. The only distinction necessary to be made, and which, in the opinion of the court is contemplated by the enactment, is that in the former case the estate of the donee is or may be liable for the tax, while in the

latter its payment can be enforced only against the property in the estate of the donor of the power. Whichever estate, however, is primarily liable for its payment, the amount is the same, and, as stated, is " the value of the estate at the time of the transfer of title."

In the opinion of the court, therefore, subdivision 4 of section 220 of the Tax Law not only is susceptible of a construction equalizing the taxes paid upon the exercise of a power of appointment by a resident and a non-resident, but, if fairly interpreted, requires such interpretation. It, therefore, follows that the appellants have not shown it to be unconstitutional beyond a reasonable doubt, granting for the moment that inequality would produce unconstitutionality.

The second branch of the case involves a consideration of whether, if such inequality existed, namely, if the effect of the statute were in a given case to impose a greater tax upon a resident than upon a non-resident, the result would be to make the statute void as opposed to our organic law. It will be noted that the only constitutional guaranties here invoked are those of the Federal Constitution. It should also be remembered that the Constitution of the State of New York, unlike those of some other States, contains no provision inhibiting unequal taxation.

This consideration is of moment in a determination of the question, since it makes available much of the reasoning of the Supreme Court of Errors of the State of Connecticut in the case of *State of Connecticut* v. *Travelers Insurance Co.* (73 Conn. 255; affd., 185 U. S. 364). That decision involved the constitutionality of a statute imposing an annual tax of one-half of one per cent of the value of shares in a domestic corporation owned by non-residents, but exempting them from local taxation, while residents were exempted from such percentage tax, their shares being assessable as personal property in the localities in which they resided.

Certain excerpts from the extremely learned and well-reasoned opinion of the court will perhaps serve to dispel some of the misapprehensions under which the appellants in the case at bar appear to be laboring.

It is said at page 261: " It is true that it is the interest of every government that the burden of taxation should be distributed fairly and equally, * * *. But the assertion that a violation of the legislative duty of fair and equal taxation under a Constitution like our own, inherently involves violation of that Constitution by an overstepping of the limits of legislative power, is not true."

After reviewing the decision of the United States Supreme Court in the case of *Knowlton* v. *Moore* (178 U. S. 41), the court says (at p. 265): " And so the precise question whether the United

States Constitution forbids inequality in any form of taxation, was presented in a mode the most concrete possible, and decided in the negative."

At page 266: " * * * the wisdom or necessity of distributing the burdens of taxation according to rules of equality, present questions on which the acts of the legislative department are conclusive.

" We see no escape from the conclusion that our fundamental law, either State or National, contains no provisions either expressed or implied that ' taxation must be equal and uniform ' * * *."

At page 272: " The defendant's claim of a special violation of § 2 of Art. 4 of the United States Constitution, is greatly narrowed by the elimination of its initial error of treating the maxim ' taxation must be equal and uniform ' as a mandate of our fundamental law. If the defendant were right as to the existence of such a mandate, then exemption from unequal taxation might be con-considered a civil right or ' privilege ' secured by our Constitution to every citizen of this State; and a law which deprived citizens of other States of that privilege might be treated as obnoxious to this particular clause. But the claim being untenable, the clause has no application, unless the legislation in question deprives citizens of our sister states of some other privilege, and one to which our citizens by virtue of their citizenship are entitled. The mere fact of discrimination is immaterial. The exercise of the legislative function necessarily involves discrimination. While discrimination in itself may be harmless, it does sometimes serve to mark the character of legislation * * *.

" ' The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.' The meaning and effect of this language in substantial particulars is settled. It is confined to the single purpose of preventing an exercise of the independent power left to each State in favor of its own citizens, in respect to their common personal rights as citizens, and against a participation in the same rights by citizens of other States. * * * To render a State law obnoxious to this clause it is essential: *first*, that the privilege claimed by the citizen of another State should be a civil right common to the citizens of the enacting State; *second*, that the privilege claimed should be denied to a natural citizen of another State in his capacity as such citizen."

At page 278: " While under this mode of taxation a heavier burden may fall on some who are citizens of other States than upon some who are citizens of this State — as a heavier burden may fall upon some than upon others of our own citizens, members of the same corporation — yet it does not appear from the record that

the effect of the law as a whole is to impose a larger tax upon citizens of other States than upon our own."

At page 281: " The claim here is that non-resident shareholders pay a larger tax than residents. This in itself means nothing. The plan of taxation includes a tax as to the two classes of corporate property for different purposes, whose amount is to be ascertained in a different manner; it necessarily involves inequality in the contributions of members of the corporation for corporate taxation; inequality in the gross amount falling upon the two classes and inequality in the several contributions of members of the same class; it necessarily rejects a theory of uniformity. This the legislature may do."

The United States Supreme Court in its affirming opinion (185 U. S. 364), after quoting much of the opinion below, says (at p. 369): " So, while there may result from year to year a variance in the amount of the burden actually cast upon non-residents as compared with that cast upon residents, yet it is also true that a like inequality will exist between residents of different localities in the State by reason of the different rates of taxation in those localities. You cannot put one resident against one non-resident stockholder and by a comparison of their different burdens determine the validity of the legislation any more than you can place a stockholder resident in one municipality over against a stockholder resident in another municipality, and by comparison of their different burdens determine the validity of the tax law in respect to resident stockholders. It does not seem possible to adjust, with unerring certainty, all the varying burdens which grow out of the fact that some of the stock of the various state corporations is held outside of the State and some within the State, and the latter in separate municipalities, with different rates of taxation."

Again, at page 371: " But further, the validity of this legislation does not depend on the question whether the courts may see some other form of assessment and taxation which apparently would result in greater equality of burden. The courts are not authorized to substitute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrimination between the parties charged with its burdens. *It is enough that the State has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against non-residents.*" (Italics not in original.)

At page 372 the court ends its opinion by a quotation from *Merchants' Bank* v. *Pennsylvania* (167 U. S. 461, 464): " This whole argument of a right under the Federal Constitution to challenge

a tax law on the ground of inequality in burdens resulting from the operation of the law is put at rest by the decision in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232."

It is obvious from this authoritative determination that the test of constitutionality is not whether a case can be supposed in which the operation of the statute may result in the placing of an unequal burden upon a non-resident, but whether the burdens of taxation have been reasonably distributed and " no intentional discrimination has been made against non-residents." Even if the statute now under consideration were construed in accordance with the contentions of the appellants, its operation would as probably be to the comparative advantage of non-residents as the reverse. Its practical effect depends wholly on economic conditions entirely unrelated to the fact of residence or non-residence. If, after the death of the testator of the underlying will, the valuation of the property subject to the power of appointment rises, the appointees of a non-resident donee of the power pay more than the appointees of a resident donee; if it falls they pay less. This certainly does not constitute discrimination for or against non-residents within the accepted definition of the term.

With these basic principles in mind, the inapplicability as a pertinent authority to the present case of the determination in *Smith* v. *Loughman* (245 N. Y. 486) is obvious. In that case, as Chief Judge CARDOZO pointed out (p. 493), as to certain classes of people " the inequalities will not balance, but will inevitably persist." In the statute here considered, this is not so, even adopting the construction of its meaning for which appellants contend, which, as stated, the court believes to be erroneous. It must, therefore, follow that even were the proper construction of the statute that claimed by appellants, it could not be held to infringe the constitutional guaranties invoked.

There remains for consideration the final question of the right of these appellants to raise these questions of constitutionality. Their position in brief is the reverse of that usually presented in cases of this type. They do not contend that the State, in this statute, has discriminated against non-residents, but allege that there is a discrimination against residents. While such a reversal of contention is extremely rare, it is not unique, and was the subject matter of the epoch-making determination of the United States Supreme Court in the *Slaughter House Cases* (83 U. S. [16 Wall.] 36).

The misconception of the present appellants as to the applicability of the constitutional provisions invoked is precisely that which existed in the *Slaughter House* cases and here, as there, was no doubt due to a failure to give due weight to the historical background

which induced the inclusion of the invoked provisions in the Federal Constitution. These historical considerations were largely reviewed in the opinion in that case and need not now be reconsidered *in extenos*. Suffice it to note, that at the time of the adoption of the Constitution the various States were small, provincial, extremely jealous communities, whose inclinations were to discriminate in favor of their own citizens against those of other States. It was to meet this condition and prevent enactments aimed against the citizens of other States that induced the inclusion of the 1st paragraph of section 2 of article IV. Its effect is stated in the opinion of the United States Supreme Court in the *Slaughter House* cases, as follows (at p. 76): "In the case of *Paul* v. *Virginia* [12 Wall. 430], the court, in expounding this clause of the Constitution, says that ' the privileges and immunities secured to citizens of each State in the several States, by the provision in question, are those privileges and immunities which are common to the citizens in the latter States under their constitution and laws by virtue of their being citizens.'

" The constitutional provision there alluded to did not create those rights, which it called privileges and immunities of the citizens of the States. It threw around them in that clause no security for the citizen of the State in which they were claimed or exercised. Nor did it profess to control the power of the State governments over the rights of its own citizens."

The court thereupon considers the effect of the clause of the Fourteenth Amendment in question, reaching the conclusion that the only rights and privileges there contemplated are those " which owe their existence to the Federal government, its National character, its Constitution, or its laws," such as free access to its seaports, protection on the high seas, and the privilege of the writ of habeas corpus.

Citation of additional authorities to like effect would be superfluous, since the principle enunciated is fundamental and established beyond question. The Federal Constitution gives no rights to an individual citizen of a State to complain of the laws of such State on the ground that they are more favorable to citizens of another State than to himself.

The court is, therefore, forced to the conclusion that appellants have failed to sustain the burden of establishing any single one of the three points whose demonstration is prerequisite to a declaration that the statute in question is invalid. To the contrary, the court is satisfied that a proper construction of the statute shows that the taxes imposed on the exercise of powers of appointment by residents and non-residents are identical; that even if a contrary

construction were adopted the law is not discriminatory against non-residents within the constitutional inhibition; and finally, that since the contention here advanced is not that the statute discriminates against non-residents, but against residents, the appellants have no standing to raise it.

Enter order, on notice, accordingly.