In the Matter of the Estate of ELLEN W. DURYEA, Deceased.

Surrogate's Court, New York County, June 19, 1935.

*Alexander & Green* [*Lasater Terrell* of counsel], for the petitioner.

*James C. Webster,* for the executors of Lisa W. Sandford, deceased.

*Edgar Hirschberg,* for the State Tax Commission.

DELEHANTY, S. In 1923 deceased created by indenture a trust for the benefit of her sister, Lisa Winchester Sandford, and reserved the power to appoint by will the persons who would take the corpus of the trust fund. The grantor died in 1927. By a codicil to her will she gave to her sister " the power to appoint by will the disposition of the corpus of said trust fund " and provided that should the sister fail to appoint the fund it would pass to the children of the income beneficiary.

In her will deceased further provided:

" *Ninth.* I direct that all transfer inheritance and estate taxes be paid out of my residuary estate, and that all the foregoing gifts, legacies and devises shall be free from and without deduction of any such taxes thereon."

The transfer tax proceeding in the estate of this deceased resulted in the imposition of a tax upon all the interests which vested in possession on the death of deceased and the taxes so imposed were paid out of the residuary estate of deceased pursuant to the quoted paragraph ninth. The taxing order fixed tentatively a tax upon the remainder interest in the fund created by the indenture of trust (as well as upon the remainder in a further legacy in trust for the sister of deceased, over which the sister had also a power of appointment), and pursuant to the permission given in the Tax Law a deposit of securities was made by the executors of deceased to secure payment of the tax on these funds when finally assessed. Such final assessment could not be made until the death of the sister and until it was determined, first, whether any appointment had in fact been made by her, and second, if an appointment were made, the tax rate applicable to the persons actually appointed and the Tax Law then applicable.

The life beneficiary of income is now dead. She appointed the trust funds to a daughter and an adopted son of hers. Subdivision 4 of section 220 of the Tax Law was amended by chapter 357 of the Laws of 1926 so as to provide: " Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property, made either before or after the passage of this chapter, such appointment when made shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or

devised by such donee by will, except that where the donor was a resident and the donee, at the time the appointment takes effect, is a nonresident, the property to which the appointment relates shall be taxable as having been transferred in the estate of the donor." The Tax Law, as so amended, was in effect on the date of death of Ellen W. Duryea. To a limited extent it was in effect when the sister died.

The executors assigned to the residuary legatee of Ellen W. Duryea all their interest in the securities deposited with the State Tax Commission. He seeks now a modification of the taxing order with the object of securing the return to him of the securities so deposited. By article 10-C of the Tax Law the appointment made by Lisa W. Sandford authorizes the inclusion of the appointed property in her estate also for the purpose of taxation. The State Tax Commission makes no opposition to this application and apparently is content with its right to collect the tax from the assets of the estate of Lisa W. Sandford. The executors of the latter's estate oppose this application and assert that as between the Sandford estate and the Duryea estate the liability for any tax that might be assessed by reason of inclusion of the trust funds in the Sandford estate is exclusively that of the Duryea estate. They assert the right to interpose in this proceeding and to secure exoneration of the assets of the Sandford estate by compelling the residuary legatee in the Duryea estate and the State Tax Commission to apply the securities on deposit to payment of any tax assessed because of the devolution of the trust funds. Petitioner asserts that the executors of Sandford are intruders into this proceeding and that they have no standing therein. He asserts that this court has none but a ministerial duty to perform and has no right to pass upon the contentions of the Sandford executors. He asserts that even if the securities now in the hands of the State Tax Commission are returned intact to him and the tax is eventually collected out of the estate of Sandford, the beneficiaries of the latter must resort to another tribunal for enforcement of the claims, if any, arising in their behalf because of such return and such collection.

The court is not willing to adopt the narrow viewpoint that its office here is only ministerial. All of the parties in interest are before the court and it is in the interest of due administration of justice that the issues finally to be determined should be determined in the first tribunal to which they are presented. The application here made is to modify an order of the court. The extent of that modification is within the discretion of the court and the court must act judicially in determining to what extent it will authorize a modification.

In her will Ellen W. Duryea gave outright to her sister the funds now taxed. In searching for the meaning of her ninth paragraph quoted above it must not be overlooked that it was part of an original integral scheme for disposing of her property, including outright gifts to her sister. So considered it must be held that the tax on these funds was intended by deceased to be paid from her residuary and that the full undiminished corpus was to reach the beneficiary named. The alteration of her scheme of disposition by granting to her sister only the income left undisturbed deceased's direction as to the incidence of the tax. That direction had been declared in the will which she confirmed by the codicil. The execution of the codicil and the altered plan of disposal of the fund furnish no basis for asserting an affirmative change of plan for the tax burden. Even under the codicil, if the sister failed to appoint the *inter vivos* trust fund or failed to appoint the testamentary trust fund, the tax upon deceased's alternative gifts of such funds must come out of the residuary estate under her paragraph ninth. It is unsound to argue that by execution of her codicil this testatrix placed the burden of the tax, in case of failure of an appointment, on the residuary but placed it elsewhere if an appointment were made. The text of the codicil furnishes no support for this contention. The argument involves the supposition that testatrix contemplated the idea that if her sister appointed the beneficiaries of the *inter vivos* fund but neglected to appoint the beneficiaries of the testamentary fund (or *vice versa*) the tax in one case would be paid by the beneficiaries and in the other case would be paid by deceased's residuary. Such discrimination is not shown by the text of the codicil. Once it is admitted, as it must be, that in any contingency (*i. e.*, the failure of the sister to appoint) the tax on these funds became payable out of the residuary estate, it must follow that in every contingency the tax became so payable. Comment is made on these possibilities, though the true rule for decision is found in the fact that the ninth paragraph is part of a will which gave the funds outright and hence meant that the tax on the funds was payable out of the residuary.

Though the conclusion must be reached that testatrix intended her residuary to pay " all transfer inheritance and estate taxes " her intent must be related to such taxes as were effective when she died. In 1927 article 10-C of the Tax Law was non-existent. That article became effective on September 1, 1930. It established a tax scheme for the estates of persons dying thereafter which superseded much of the succession tax law theretofore effective. Articles 10 (the Transfer Tax Law affecting residents), 10-A (the Transfer Tax Law affecting non-residents) and 10-B (the original

Estate Tax Law) became no longer operative as to estates of persons dying after September 1, 1930. The language used by testatrix cannot be made applicable to a tax burden unpredictable even when she died. She can be held to have meant her estate to be bound to pay any tax imposed by law up to the date of her death because she could have changed her will while she lived. Her words cannot be applied to any scheme of wealth distribution which after her death might be enacted as a tax law. This testatrix cannot have intended to subject her estate to tax burdens of future creation. She risked payment out of her estate of any tax imposed under the law as she knew it. This included the tax payable under the then existent Transfer Tax Law by reason of inclusion of the fund in the estate of her sister. It included, too, the tax payable on her own gift of the fund if her sister failed to appoint.

The separate character of the tax which under article 10-C may be imposed on the estate of Lisa W. Sandford is emphasized in that paragraph of section 233 of the Tax Law which provides for the composition of a transfer tax upon property which is subject to the exercise of a power of appointment. That paragraph says expressly that notwithstanding the composition of the tax prior to the actual exercise of the power of appointment " such property shall nevertheless be included in the gross estate and taxed under the provisions of article ten-c of this chapter, and may be subjected to taxation under any subsequent law imposing a death tax upon the exercise of a power of appointment." This provision was inserted in the Tax Law dealing with taxable transfers at the same time that article 10-C was adopted. Thenceforth it was possible to dispose finally of the tax liability of an estate whose securities were on deposit. It should be emphasized that even if such composition of tax were effected and the tax paid the same property was again subject to tax in the estate of the donee.

It should be noted, too, that in the estate of the donee the fund passing by the appointment is dealt with as part of a gross estate upon which the tax burden is computed only after ascertainment of the actual net taxable estate. It might happen that the donee's estate would pay no tax or would pay a rate differing from that which might be imposed on the property if it passed in the donor's estate. Under the Tax Law the State is relegated to the donee's estate for its tax on the appointed fund and must take the risk of the condition of the donee's estate except only if the donee is a non-resident. (Tax Law, § 220, subd. 4; § 249-r, subd. 7-a.)

The Tax Law creates for tax purposes " estates " in which may be included properties not owned by the person whose " estate " is taxed. So long as the State acts within constitutional limits it

may declare any basis it chooses for levying a tax. It may base a tax upon devolution of the actual property of a deceased and, as well, upon the exercise of a privilege to control the devolution of the property of another. Any tax which may be assessed against the " estate " (for tax purposes) of Lisa W. Sandford will be assessed under a law which became effective September 1, 1930. No tax may be assessed on the " estate " (for tax purposes) of Lisa W. Sandford under any law effective at the death of Ellen W. Duryea. That tax when assessed may burden the recipients of the funds intended by Ellen W. Duryea to pass free of taxes as she knew them, but the burden is one which arises under a tax law of which Ellen W. Duryea could have had no concept and to which her words can have no application.

For the reasons stated, it is held that the tax which may be imposed hereafter upon the estate of Lisa W. Sandford because of the inclusion in her gross tax " estate " of the funds passing by the appointment made by her does not come within the description of " transfer inheritance and estate taxes " as those words were used by Ellen W. Duryea in the ninth paragraph of her will.

The proposed tax compromise which relates to other funds is approved.

Submit, on notice, order modifying the taxing order in accordance herewith.