In the Matter of the Estate of ABRAHAM SUDEROV, Deceased.

Surrogate's Court, Kings County, September 18, 1935.

*Engel Brothers*, for the executors.

*Harry M. Peyser* [*Jerome M. Hirsch* of counsel], for the State Tax Commission.

WINGATE, S. The question of interpretation of the Estate Tax Law which is presented by this appeal of the State Tax Commission from the *pro forma* order entered on the report of the appraiser, is novel, so far as the New York act is concerned, and, if the position of the appellant is correct, has never been adjudicated even under the Federal statute.

The property which belonged to the decedent is valued as of the date of his death at $184,110.01. Claims against his estate total $283,148.77, and the estimated funeral and administration expenses amount to $52,935.58. It is obvious, therefore, that the estate as such is hopelessly insolvent, and that its creditors will indeed be fortunate if they receive payments of fifty cents on the dollar of their claims.

From an estate tax standpoint, however, a complication is injected into the situation by reason of the fact that the life of the

decedent was insured under policies payable to others than his executors, in a sum which has yielded the beneficiaries a total of $372,385.49.

Under subdivision 9 of section 249-r of the Tax Law, this sum, after the subtraction of the exemption of $40,000, has been used as one of the factors in determining the " gross estate," which furnishes the primary basis for the computation of the tax.

The present controversy arises in respect to the deductions which are permissible under section 249-s for the purpose of calculating the " net estate."

It is the contention of the State Tax Commission that since the rights of the creditors of the deceased, as against the proceeds of the policies, " are confined to the amount of the premiums, with interest, which may have been paid by the deceased in fraud of his creditors " (*Chatham Phenix Nat. Bank* v. *Crosney*, 251 N. Y. 189, 198), only $131,174.43 of the admitted claims, aggregating $283,148.77, is deductible from the gross estate in the determination of the net taxable estate.

The position of the executors is the reverse, and the appraiser has ruled in their favor and has permitted deduction of the total of the $283,148.77 of the claims asserted against the estate.

Each opponent places reliance upon the exact wording of the applicable statute and derives comfort from certain decisions of the Federal and State courts although in the main admitting that they possess certain features distinguishing them from the case at bar.

The distinction between this case and *Matter of Smith* (137 Misc. 107), in addition to the fact that the latter was decided under the Transfer Tax Law while the present is under the Estate Tax Law, lies in the fact that the beneficiaries under the insurance policies are not directly and personally liable to the creditors of the deceased to the extent of their benefits received from the insurance.

Under article 10-C of the Tax Law, a tax of specified " percentages of the net estate is * * * imposed upon the transfer of the net estate of every person dying on or after the effective date of this article." (Tax Law, § 249-n.) " The term ' net estate ' means the net estate as determined under the provisions of section two hundred and forty-nine-s." (Tax Law, § 249-m, ¶ [c].)

So far as applicable to the present controversy, section 249-s reads as follows: " For the purpose of the tax, the value of the net estate shall be determined by deducting from the value of the gross estate: 1. Such amounts * * * (c) for claims against the estate * * * as are allowed by the laws of this state."

In the present case the amount of the " gross estate " from which the deductions authorized by section 249-s are to be taken for the

purpose of ascertaining the base upon which the tax at the rates specified is to be figured, is not in controversy, and amounts to $516,495.50, made up of the general property passing through the hands of the executors to the extent of $184,110.01, plus the insurance proceeds (less the $40,000 exemption), which does not go to the executors but is payable direct to the beneficiaries named in the several policies.

Frequent impression to the contrary notwithstanding, there is nothing esoteric or mysterious about the operation of the law in question. Its application presents a simple mathematical calculation. First the sum of certain given factors is to be ascertained. From this is to be subtracted the sum of certain other specified items. The tax is a given percentage of the resulting remainder.

The elements of both sets of factors are specified in the act. To a certain extent at least, these have been arbitrarily chosen by the Legislature and incorporated into the computation. Perhaps the most arbitrary inclusion of all is that of the insurance payable to others, which underlies the present controversy. The proceeds of such policies were not and never could be a part of the property of the deceased. " The right accrues to individuals who answer a certain description specified in the contract, but it is not a right which the decedent ever possessed and it is fundamental that *non dat qui non habet.*" (*Matter of Haedrich*, 134 Misc. 741, 747; affd. on opinion of this court, 230 App. Div. 763; affd., 256 N. Y. 608; *Steinback* v. *Diepenbrock*, 158 id. 24, 30; *Ferdon* v. *Canfield*, 104 id. 143, 146; *Matter of Pastore*, 155 Misc. 247, 250.) The action of the Legislature and the Congress in the inclusion of this element as a part of the estate of the decedent is, therefore, either an indirect affirmation of a position which is a legal falsity, or is merely an arbitrary selection of a subject for taxation similar in kind, though not of course in degree, to that which would have occurred had the number of grains of rice or coffee beans on the pantry shelf of the decedent been inserted as a criterion of determination. The latter is obviously the correct explanation. The taxation of unearned benefits accruing on death is necessary for the needs of the government and is perhaps one of the most painless methods of extraction known. Life insurance proceeds are such benefits and, therefore, should be taxed. Such, in substance, appears to be the legislative syllogism with which the person affected can find no greater fault than with the imposition of any other tax the incidence of which is motivated rather by necessity than by the dictates of logic or legal theory. (See *Matter of Duryea*, DELE-HANTY, S., 156 Misc. 144, 148.)

The purpose of this discussion is not in any degree intended as a criticism of the legislative expedient adopted, but merely as a demonstration of the quite apparent fact that the elements entering into the computations of the tax cannot properly be attacked or defended on bases of pure logic. The acts as a whole constitute a reasonably just and efficacious exercise of the sovereign authority of impost and the sole pertinent question in any inquiry respecting their terms relates to the meaning placed by the legislative powers on the description of the various elements prescribed as entering into its computation.

In both the State and Federal statutes, which, in the interests of uniformity, should receive a like interpretation (*Matter of Weiden*, 263 N. Y. 107, 110), a deduction from the arbitrarily computed "gross estate" is permitted in computing the "net estate" of "such amounts for claims against the estate as are allowed by the laws of the State."

The State Tax Commission contends in effect that this should be read as if a proviso had been inserted limiting the deduction to claims which are actually possible of payment from the assets of the estate. This would make the clause read in substance that a deduction shall be permitted for claims against the estate which constitute legally enforcible demands against it and are actually paid from its assets.

The only New York authority cited in support of this contention is *Matter of Wormser* (36 Misc. 434), in which the surrogate, in referring to the deductions permissible under the old Transfer Tax Law, said: " Debts which are allowable as a deduction from the taxable estate are only such as could have been enforced against the estate if payment had been resisted. (*Matter of Gould*, 19 App. Div. 352.) "

This phrase is lifted bodily from page 358 of the authority cited, but its connotation as there used is not that attempted to be attributed to it by the State Tax Commission, but that of a claim capable of legal substantiation.

The same criticism applies to the other authorities cited on this point by the Tax Commission, which seizes upon certain language in *Jacobs* v. *Commissioner of Internal Revenue* (34 F. [2d] 233, 235) as supporting its contention. The court there says: " It was, in our opinion, claims presented and allowed or otherwise determined as valid against the estate and actually paid or to be paid that Congress had in mind, when it provided for the deduction from the gross estate of ' claims against the estate ' in determining the value of the net estate for taxing purposes."

This language, whereas possibly supporting the position of the appellant when read as an excerpt isolated from its context and the

facts which evoked it, cannot be read in this way but must be limited by the situation adjudicated and accompanying statements of the court. (*Matter of Davison*, 137 Misc. 852, 858; affd., 236 App. Div. 684; *Matter of Galloway*, 139 Misc. 183, 184; *Matter of Marsh*, 143 id. 609, 617.)

The particular claim about which the court was then writing concerned an antenuptial agreement, upon which the surviving wife made no claim, preferring to accept a proffered testamentary gift in lieu thereof. The court held that " a claim without a claimant is a sort of legal figment " and that " the claims which Congress intended to be deducted were actual claims, not theoretical ones."

With this limitation on the previously quoted language of the court the present respondent has no quarrel with the decision, since its lack of relevance to the present discussion becomes obvious.

The decision in *United States* v. *Mitchell* (74 F. [2d] 571) is also not helpful to a determination of the present problem. There the question concerned the propriety of a deduction for the payment of a claim based on an oral promise of the decedent to answer for the default of another. The *rationes decidendi* of the court in holding such a deduction improper, given at page 573, are illustrative of the extent of the authority. It says: " The fact that a claim was presented and allowed in the Probate Court and subsequently paid by the executors has no bearing on the deductibility of the claim in question * * *. One may pay a claim which he is under no legal obligation to satisfy. He may make gifts. He may waive legal defenses and, prompted by most commendable motives, assume and pay obligations that have no legal basis for support. * * * Nor can an asserted obligation which was enforceable only at the option of the deceased obligor be deducted."

A precedent far closer on the facts than any of the foregoing is *Commissioner of Internal Revenue* v. *Straus* (77 F. [2d] 401, decided by the Circuit Court of Appeals for the Seventh Circuit on March 30, 1935; rehearing denied, June 10, 1935). It appears from the opinion (p. 401) that the estate of the decedent " was insolvent except for insurance on his life."

Two questions were litigated, *first*, as to whether property forming a part of an *inter vivos* trust should be included in the gross estate, and, *second*, respecting the deductibility of debts from the gross estate. On the latter point, the court says (at p. 405): " As to deductible debts, we agree with the Board of Tax Appeals. Just as we held that the Board and the courts can not exclude trust funds that are included by the statute, so do we hold that the Commissioner may not exclude deductions in the way of claims which the statute allows * * * Section 303, (a), (1), Revenue Act of 1926

(26 U. S. C. A. § 1095, [a], [1]), does not require the allowance of the debt by the court or its payment by the estate in order that it may be deducted from the gross estate. The Commissioner was without authority to make a rule which refused the full effect of the deductible allowance in the way of claims which was provided for by the said section 303 (a) (1)."

In its present brief, the State Tax Commission seeks to distinguish this case from the one at bar by the assertion that the objection by the government to the deduction of the claims was predicated solely on the absence of an adjudication of their validity by the Probate Court. A careful reading of the entire opinion fails to disclose any foundation for this position. On the contrary, it expressly states the position of the court to be that the statute means just what it says and is to be taken as written, and that when it provides that property of a specified description is to be included in the gross estate, this must be done, and that when it provides that offsets of a certain nature shall be deducted, this is equally obligatory.

The deductions for claims, as noted, are for " such amounts for claims against the estate as are allowed by the laws of the State." The court expressly holds that adjudication of the validity of the claim is unimportant if, as a matter of fact, it is one legally enforcible under the laws of the State; and, second, if it is a claim within this description, the fact of whether or not it is ultimately paid is immaterial by reason of the statutory fiat.

Unless the uniformity of interpretation of the State and Federal laws, enjoined by the Court of Appeals in the *Weiden* case, is to be ignored, it is incumbent upon the courts of this State to follow the rules thus enunciated by the Circuit Court of Appeals.

Quite independently of this decision, however, this court would attain the same result. As has been pointed out, the enactments constitute a somewhat arbitrary basis for the fixation of tax upon decedent devolution. The inclusions and exclusions should consequently be taken as written. The deduction in question is substantially equivalent to the first definition contained in subdivision 3 of section 314 of the Surrogate's Court Act. (See, also, *Matter of Dimou*, 149 Misc. 83, 85; *Matter of Franks*, 154 id. 472, 473, 474.) With a word of such certain and well-defined meaning, there is no justification for altering its accepted connotation as a result of extraneous circumstances.

Even as a matter of abstract justice to the State, which is hardly a pertinent consideration in the interpretation of a statute based upon arbitrary fiat and not on legal principles or logical conclusions, it is difficult to perceive any cause for its complaint. This is not a

transfer tax, for which reason the fact that the beneficiaries of the insurance will not be obliged to pay the total amount of the debts is no concern of the State. Under the determination of the appraiser the State receives precisely the same sum which it would receive were all the assets of the " gross estate " liable for the obligations of the decedent. If any one has a right to complain it is either the creditors who will not be paid in full or the beneficiaries of the policies of insurance whose contract rights have been partially curtailed and invaded in order to supply needed revenue for the government.

For the reasons stated, the report of the appraiser and the *pro forma* order entered thereon will be affirmed.

Enter order on notice.