In the Matter of the Estate of CAMILLE F. HOWELLS, Deceased.

Surrogate's Court, Kings County, November 18, 1932.

*Russell, Shevlin & Russell* [*Joseph J. Shevlin* of counsel], for the executor.

*E. Ivan Rubenstein*, special guardian for Virginia P. Howells.

*Patrick J. McDonald*, for Bessie M. Carey.

*James M. Baird*, for Caroline F. Adams.

*Joseph J. Speth* [*Chester T. Krouse* of counsel], for claimant Charles E. Rattray.

WINGATE, S. The statement has frequently been made that judicial tribunals struggle to preserve the validity of a testamentary instrument and do not yield to a construction producing intestacy

unless such a course is absolutely inevitable. It is believed that the natural connotation of such a statement is far too broad. The office of the court in any proceeding for testamentary construction is twofold, as was pointed out in *Matter of McCafferty* (142 Misc. 371, 372; affd., 236 App. Div. 678). It must first interpret the meaning of the will, ascertaining what the testator intended by the language employed when read in the light of the circumstances surrounding him at the time of its execution, and when this has been determined, it must adjudicate the legal effect and consequences of the directions as thus interpreted.

It is only in the process of interpretation that the principle of presumed, or rather of desired, validity obtains. If the will is ambiguous and capable of two or more meanings, one of which is lawful and another contrary to law, the alternative which results in effectiveness rather than that which spells invalidity, should be adopted. This, the noted statement means and nothing more. " Only where there is fair room for two constructions may the court take the one to preserve rather than to overturn the instrument." (*Matter of Magnus*, 179 App. Div. 359, 362.) The testator, not the court, must make the disposition of his property. All the latter can do is, so far as legal rules permit, to effectuate the disposition which the testator has directed. It cannot make a new and valid will for him if he has failed in this respect. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 92; *Central Trust Co.* v. *Egleston*, 185 id. 23, 33; *Matter of Shumway*, 138 Misc. 429, 434, and cases cited.)

Approaching the task of interpretation of the will at bar, and taking seat in testatrix's arm chair, which *Boyes* v. *Cook* (L. R. [1880] 14 Ch. Div. 53, cited in *Fell* v. *McCready*, 236 App. Div. 390, 406) enjoins as the proper attitude for the purpose, it is found that testatrix was a married woman, apparently a school teacher by occupation, living apart from her husband. Her sole next of kin was a sister with whom she was apparently out of sympathy, since her name was coupled in the will with that of testatrix's estranged husband, as intentionally disinherited. The place in her affections usually occupied by family or relatives seems to have been taken by pets, of which two cats and three dogs survived her. She appears also to have been interested in one Charles E. Rattray, who was a retired policeman, living with his sister on a pension. Rattray was no blood relation to testatrix.

With this meagre background of pertinent facts, the provisions of the will must next be examined. It is apparently a homemade affair, and, after directing payment of debts, giving a specific bequest of a piano already in the possession of the beneficiary,

and a general legacy of $500 to a woman living in the same house, proceeded as follows:

"*Fifth.* All the rest, residue and remainder of my estate, both real, personal and mixed, and wheresoever the same may be situate, and any unused balance of moneys derived under Option No. 1 from the Teachers' Retirement System I give in trust unto my Executor hereinafter named to and for the following uses and purposes:

"To hold, invest and re-invest the principal thereof in such securities as are permitted to Savings Banks in the State of New York, and to collect and receive the income thereof and out of the net amount of such income I direct that my said Executor apply and expend so much of said income for the care, comfort and maintenance of my pet animals as my friends and co-teachers, Elera Burck and Milison Dutrow shall direct and authorize. These teachers have personally assured me that they would assume such responsibility.

"I further authorize and empower and hereby direct my said Executor or the successor Trustee of my estate to apply the balance of the income from my estate to the care, comfort and maintenance of Charles E. Rattray and should conditions arise during the lifetime of Charles E. Rattray which would bring about the need of more income for his necessary care, comfort and maintenance, in addition to the amount of income herein directed to be applied to or paid for his support, that then and in such case my Executor or his successor Trustee of my estate is authorized and directed to use such portion of the principal of said trust estate as is required to amply provide for his care, comfort and maintenance.

"*Sixth.* Upon the death of said Charles E. Rattray or should he predecease me, then upon my death I authorize and direct my Executor or the successor Trustee of my estate to expend an amount not to exceed $400 to provide a suitable stone to mark my last resting place and such additional sum as is necessary to provide for the perpetual care of my burial plot.

"*Seventh.* I direct that Frederick Z. Lewis, residing at 39 Winthrop Street, Brooklyn, shall take charge of and arrange for my funeral and burial.

"*Eighth.* I authorize and empower my Executor or the successor Trustee of my estate to retain any part or portion of my estate as long as he or she shall consider it to be for the benefit of my estate to do so and to provide for the care of my pet animals while they live.

"*Ninth.* I designate the Teachers' Welfare Loan Fund as residuary devisee, legatee and beneficiary to receive the remainder

of my estate held in trust by my executor or his successor Trustee of whatsoever kind and wherever located. I do this in recognition of the worthy purposes for which the Fund has been created and because it has been truly helpful to me. It is my desire and wish to help perpetuate its usefulness to others who like myself may require assistance in their hour of need.

"*Tenth.* I nominate, constitute and appoint Louis Taylor, Treasurer of the Teachers' Welfare Loan Fund, who resides at 523 Fifth Street, Brooklyn, as Executor of and Trustee of my estate under this my last Will and Testament, and in case of his death prior to the death of said Charles E. Rattray or myself, then and in that case I nominate, constitute and appoint the Treasurer of the Teachers' Welfare Loan Fund who succeeds the said Louis Taylor in office as Treasurer of the said Teachers' Welfare Loan Fund to act as Executor and Trustee of my estate."

From the disclosed situation of the testatrix, coupled with the directions of the will, the conclusion is inescapable that her dominant testamentary desire was to provide for the care and welfare of her pet animals who constituted her sole immediate family. The first charge upon the income of the residue of the estate was dedicated to their comfort and maintenance. Only after this was attended to, was any portion thereof devoted to any other use. Her paramount interest in her pets was further demonstrated by the fact that whereas she gave a power of invasion of principal in favor of Rattray, should conditions arise in his life which made such a course necessary, the power of the court to make direction in this regard was expressly limited by the grant of authority to the trustee in Item eighth to retain so much of the fund in his hands as might be necessary to care for her pet animals.

The validity of a testamentary trust in this State must be determined, *inter alia*, by the provisions of sections 11 of the Personal Property Law and 42 of the Real Property Law which provide in substance that absolute ownership of property shall not be suspended for a period longer than during the continuance, and until the termination, of not more than two lives in being at the death of the testator.

In the will at bar no express time for termination of the trust is given. The directions are merely to pay so much of the income as shall be directed by testatrix's named friends for the care and maintenance of her pet animals, and the balance to Charles E. Rattray.

The learned referee in this proceeding has read the sixth item of the will as amounting to a direction that the trust shall end at

Rattray's death. The court is unable to agree with his conclusion in this regard. The terms of that direction are merely that upon his death, or upon testatrix's death should he predecease her, the executor shall pay from the principal fund the sum of $400 for a monument upon her grave and a reasonable sum for its perpetual care. This provision does not by express terms or necessary implication affect any portion of the principal other than such $400 and additional reasonable sum, and merely deducts this amount from the total principal dedicated for the prescribed purposes.

Had Rattray predeceased the testatrix, far from the trust never having come into existence, as the referee concludes, the primary purpose of the testatrix to provide for the welfare of her pet animals would have remained. An interpretation, therefore, that Rattray's predecease of testatrix would have prevented any portion of the trust from coming into existence, could be attained only by the complete deletion from the will of the entire direction for use of the trust income for the support of the animals. Such a conclusion would be in direct conflict with the basic principle that in the interpretation of a written document all of its words shall be given effect if at all possible. (*Matter of Buechner*, 226 N. Y. 440, 443; *Fleischman* v. *Furgueson*, 223 id. 235, 239; *Adams* v. *Massey*, 184 id. 62, 69; *Roseboom* v. *Roseboom*, 81 id. 356, 359; *Van Nostrand* v. *Moore*, 52 id. 12, 20; *Sedlaczek* v. *de Dreuzy*, 220 App. Div. 446, 450; *Matter of Briggs*, 180 id. 752, 757; *Kent* v. *Fisk*, 151 id. 279, 282; *Matter of Leonard*, 143 Misc. 172, 180, 184; *Matter of McEvoy*, 139 id. 349, 352; *Matter of Sheffer*, Id. 519, 520; *Matter of Ackerman*, 137 id. 910, 912; *Matter of Kirkman*, 134 id. 527, 528.)

The contention of the executor differs somewhat from the conclusion of the referee, and is to the effect that the limited power of invasion of principal granted to the trustee constitutes an implication that the trust was primarily for the benefit of Rattray in spite of the express words of the testator dedicating the first income of the trust to use for the benefit of the animals. The conclusive reply to this position is that the authorization for invasion amounted merely to a limited condition subsequent on the continuance of the trust, which condition subsequent being uncertain of performance, will not avail to bring the trust as an entirety within the provisions of the statute, since it is primary that, " in determining the validity of limitation of estates, * * * it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future

estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void." (*Schettler* v. *Smith*, 41 N. Y. 328, 334; *Matter of Terwilligar*, 135 Misc. 170, 175; affd., on the opinion of this court, 230 App. Div. 763, and cases cited.)

Since, under the terms of the will, the use of any portion of the principal for Rattray was expressly conditioned on the happening of future events making possible a demonstration that circumstances had transpired which "would bring about the need of more income" for his necessary care, which events, being in the future, could not be foretold, it follows that viewing the matter from the time of death of the testatrix, this authority for invasion was not a limitation which "in every possible contingency" would absolutely terminate the trust within his lifetime. Obviously he had no claims upon the trust fund until testatrix's death. Even if, at the moment of her death, his situation had been such as to require more than the balance of the income dedicated to him after the satisfaction of the prior wants of the pets, there would be no assurance that he would live for a period long enough to exhaust the principal, or, indeed, even for a day. It follows, therefore, that the authority for invasion of principal cannot be deemed a limitation which "will absolutely terminate" the trust within his lifetime.

Since there is no express or necessarily implied condition absolutely terminating the trust until the death of all of the pet animals who survive the testatrix and of Rattray, the sole question remaining for solution on this branch of the case is as to whether a trust for the application of income for the lives of one human being and five domestic animals comes within the inhibitions of the statute.

It is primary that a portion of a human life is to be considered as a life in computing "lives in being" within the terminology of the statute, wherefore, the argument which has been advanced that the lives of cats and dogs are commonly known to be of shorter duration than those of human beings, possesses no relevancy to the determination. It is a matter of common knowledge that such domestic animals frequently live to ages of ten or beyond, and it would be absurd to assert that any measuring life which might extend for a period of ten years beyond the death of the testator, or even for an appreciable fraction thereof, was an inconsequential limitation. Had the trust been limited upon the lives of five relatives of the testatrix who were all of the ages of sixty-seven or above, plus the life of Rattray, no one would have the temerity to assert that the suspension was valid, yet the expectancy of

life of an individual of sixty-seven years, according to the American Experience Table of Mortalities, is precisely ten years.

Counsel have cited no authority in which the question of the validity of a testamentary benefit for domestic animals has been adjudicated, and the independent research of the court has disclosed only two. The first in point of time is *Matter of Dean — Cooper-Dean* v. *Stevens* (41 Ch. Div. 552), decided in England in 1889. By the terms of the will, testator gave to his trustees his horses and dogs and charged his estate, devised in earlier items of his will, " with the payment to my trustees for the term of fifty-years commencing from my death, if any of the said horses and hounds shall so long live, of an annual sum of £750. And I declare that my trustees shall apply the said annual sum payable to them under this clause in the maintenance of the said horses and hounds for the time being living." This provision was attacked on several grounds, the most seriously asserted being that the beneficiaries were unable to enforce performance. In sustaining the direction, the court says (at p. 557): " Is there then anything illegal or obnoxious to the law in the nature of the provision, that is, in the fact that it is not for human beings, but for horses and dogs? It is clearly settled by authority that a charity may be established for the benefit of horses and dogs, and, therefore, the making of a provision for horses and dogs, which is not a charity, cannot of itself be obnoxious to the law, provided, of course, that it is not to last for too long a period."

A very recent and far more apposite decision is found in the advance sheets for April, 1932, of the Irish Reports in the case of *Matter of Kelly — Cleary* v. *Dillon* (1932 Irish Rep. 255) which was a decision of the High Court of Justice, Saorstate Eireann, rendered on April fourteenth of this year. The pertinent bequest in the will there under construction read: " I leave one hundred pounds sterling to my executors and trustees for the purpose of expending four pounds sterling on the support of each ° of my dogs per year." In the course of an elaborate opinion which upheld the validity of the trust for twenty-one years, but no longer, the court says (beginning at p. 260): " If the lives of the dogs or other animals could be taken into account in reckoning the maximum period of ' lives in being and twenty-one years afterwards,' any contingent or executory interest might be properly limited, so as only to vest within the lives of specified carp, or tortoises, or other animals that might live for over a hundred years, and for twenty-one years afterwards, which, of course, is absurd. ' Lives ' means human lives. It was suggested that the last of the dogs could in fact not outlive the testator by more than twenty-

one years. I know nothing of that. The court does not enter into the question of a dog's expectation of life. In [261] point of fact neighbor's dogs and cats are unpleasantly long-lived; but I have no knowledge of their precise expectation of life. Anyway the maximum period is exceeded by the lives even of specified butterflies and twenty-one years afterwards. And even, according to my decision — and, I confess, it displays this weakness on being pressed to a logical conclusion — the expiration of the life of a single butterfly, even without the twenty-one years, would be too remote, despite all the world of poetry that may be thereby destroyed. In *Robinson* v. *Hardcastle* [2 Bro. C. C. 22, at p. 30] Lord THURLOW defined a perpetuity in these words: ' What is a perpetuity, but the extending the estate beyond a life in being, and twenty-one years after? ' Of course by ' a life ' he means lives; and there can be no doubt that ' lives ' means lives of human beings, not of animals or trees in California."

It is, of course, apparent from this language of the court that were it construing a statute similar to our own, which limits the duration of a trust to two lives in being, without the addition of the twenty-one-year period, it must have declared any trust not limited upon human lives wholly bad. In the case at bar it is unnecessary for the court to go to the extent of holding that a trust cannot be limited other than on human lives, since here there is no question of whether a limitation on the lives of *two* domestic animals would infringe upon the terms of the statute, since on the facts of the case there were *five* of them. It is probable, however, in view of the phraseology of subdivision 3 of section 96 of the Real Property Law, referring to the " use of any *person*," that such result would be unavoidable even were two only in existence at testatrix's death. In any event, it may be said with assurance that the present trust, limited on the lives of five animals and one human being, is bad.

So far as concerns the trust, therefore, the sole remaining question is as to whether its terms indicate an intention on the part of the testatrix that portions of the principal were to be segregated, and devoted on the one hand, to the animals collectively, and to Rattray as an individual on the other. In this connection the language of the Court of Appeals in *Leach* v. *Godwin* (198 N. Y. 35, 41) becomes pertinent. The court there says: " In cases where a trust for the benefit of several persons is held in one fund it is necessary for the purpose of holding that they constitute separate and independent trusts that each part of the principal fund should be liberated from the trust fund upon the termination of the lives in being at the death of the testator for which the trust is held

and also to find from within the will itself that such was the intention of the testator." (See, also, *Smith* v. *Cheesebrough*, 176 N. Y. 317, 322; *Kalish* v. *Kalish*, 166 id. 368, 375.)

According to the terms of the will at bar, so much of the income as may be determined necessary by testatrix's named friends was directed to be employed for the welfare and maintenance of her pets. Conceivably the sum which would be directed by them for use in this connection would vary from time to time depending on the survival of the animals to be benefited with possibilities for increase in the event of their illness. It is further possible that were the principal of the trust to be depleted by inevitable mischance, as has occurred so frequently in trust estates in these times, the sum called for by the designated persons might exhaust the entire income. It cannot, therefore, be said that testatrix's express direction could be satisfied by any division of the principal sum and allocation of a portion thereof for the care of the animals and the balance for Rattray. The entire income to the amount named by her friends is subject to call for the former and not until the satisfaction of these demands can any portion thereof be used for Rattray. It follows, therefore, that the two portions of the trust are so intermingled and interwoven that the invalidity in respect to the animals inevitably involves a declaration that the entire trust is void.

With the elimination of this prior use, it would usually follow that the principal fund would become immediately payable to the remaindermen. In the present instance, however, the legacy of this remainder, as has been conceded upon the hearing, is to an unincorporated association known as the " Teachers' Welfare Loan Fund."

Whatever may be the opinion of the court respecting the unwisdom or lack of logic of such a position, it is firmly established in our law that an unincorporated association is incapable of taking and holding personal property. (*Downing* v. *Marshall*, 23 N. Y. 366, 382; *Sherwood* v. *American Bible Society*, 1 Keyes, 561, 566, 567; *White* v. *Howard*, 46 N. Y. 144, 160; *Fralick* v. *Lyford*, 107 App. Div. 543, 546, 547; *Ely* v. *Megie*, 219 N. Y. 112, 143; *Matter of Patterson*, 139 Misc. 872, 874.) The only method by which a bequest to such a beneficiary can be saved is by the application of the terms of section 12 of the Personal Property Law, which provides that a gift to religious, educational, charitable or benevolent uses shall not fail by reason of uncertainty of the beneficiaries. Whether or not a particular unincorporated association comes within the terms of this statute, is purely a question of fact. If it is to receive the benefit of the exception, it must be demonstrated that its pur-

poses fall strictly within the terms of the statute and do not involve any private gain. (*Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 id. 601; *Matter of Frasch*, 245 id. 174; *Matter of Durbrow*, Id. 469; *Matter of Kelley*, 138 Misc. 190, 192.) On ordinary principles, the burden of proof is on the legatee to demonstrate that its objects are solely such as to bring it within the beneficial terms of the statute. Not only is this obvious on the basic principles of pleading and proof, but it has been so held in a related connection in *Matter of Townsend* (215 N. Y. 442, 445), where the Court of Appeals says: " The respondent, having been duly served with the notice of the hearing before the appraiser and having failed to appear in response thereto, the appraiser had jurisdiction of the proceeding, and upon the record then before him could not do other than determine the tax payable upon the legacy to respondent. The title of respondent, ' The New York Exchange for Woman's Work,' was not notice to him that the corporation was one entitled to exemption, and even did the name indicate that the corporation might be charitable in its purpose, he would not be justified therefrom in assuming the other facts required by statute to secure the benefits of exemption from taxation. Neither is it incumbent upon an appraiser to devote the time necessary to investigation of corporate legatees under wills in order to ascertain the status of the same. It was the duty of the respondent to appear before the appraiser and the burden was upon it to produce evidence to show that it was entitled to exemption, and for the reasons, not alone that it was organized under the statute of 1848, but facts which would disclose its right to exemption under the provisions of section 221 of the Tax Law."

In the case at bar, although served with citation, this residuary legatee has not only failed to introduce evidence upon which to base a decision in its favor, but has even defaulted in appearance and this in spite of the fact that the executor of the will became entitled to his office as such solely by reason of his official position with the association. The statement of testatrix in her will of her feelings of gratitude toward this association fall far short of the necessary demonstration to warrant its inclusion within the exceptions of section 12 of the Personal Property Law. It might well be that an individual borrower would feel grateful to his banker for making a loan to him, but a mere expression of such gratitude would not justify a court in determining that the lender was engaged in eleemosynary work. In view of this failure of proof, it must follow that the remainder gift to the Teachers' Welfare Loan Fund is void under the recognized rules of law, as being one to an unincorporated association.

The final result is that all the dispositive provisions of the will above quoted are ineffectual and void, and that the testatrix must be determined to have died intestate with respect to the property covered thereby.

Since the claim of Mrs. Humiston is based solely upon the rights of Rattray under the will, which are determined to be non-existent, there is no basis for an allowance of her charges against the estate, even if under other conditions they might have been well founded, which appears extremely doubtful.

It follows that the report of the referee must be modified to the extent and in the manner herein indicated.

Proceed accordingly.