In the Matter of the Estate of MARY START BATES, Deceased.

Surrogate's Court, Kings County, September 6, 1934.

*Weil, Golshal & Manges,* for the executor.

*Edward A. Ingraham,* for the Methodist Episcopal Hospital of the City of Brooklyn.

WINGATE, S. The contested question of construction on this accounting gives renewed point to the old English barristers' toast: " To the jolly Testator who makes his own will." The document in question is on the usual legal form and was obviously prepared without legal advice.

Excluding the stock introductory paragraph, the appointment of the executor and the *in testimonium* clause, the instrument reads:

" *First,* after my lawful debts are paid I give and bequeath to John B. Fickling of 325 Stratford Road, Brooklyn, N. Y., the sum of Five Hundred ($500) Dollars.

" *Second,* I give and bequeath any stock in my name in Cash and Credit Corporation, in New Jersey, to the Methodist Episcopal Hospital, Seventh Avenue, Brooklyn, N. Y.

" *Third,* after the payment of any and all other expenses, I give and bequeath the balance on hand in the Chase National Bank, of

Brooklyn, and the Lafayette National Bank, of Brooklyn, N. Y., to the Methodist Episcopal Hospital, Seventh Avenue, Brooklyn, N. Y.

"*Fourth, And* the residue of my estate, both real and person, if any remains, I give and bequeath to John B. Fickling, 325 Stratford Road, Brooklyn, N. Y."

This will purports to have been executed on April 20, 1928. Testatrix died on February 7, 1930. No extraneous evidence of the circumstances surrounding the decedent at the time of the execution of the document has been adduced.

The total estate at the time of death aggregated $14,525.78, of which shares in the National Cash and Credit Association, specifically bequeathed under the second item, accounted for $3,956.10. There was no account in the Chase National Bank, and the balance in the Lafayette National Bank amounted to $5,773.77. In other words, excluding these items, the gross estate amounted to $4,795.91. Funeral expenses amounted to $673.75, administration expenses to $1,647.24, and debts to $523.67.

The controversy centers upon the meaning of the words " other expenses " in the " third " item, the balance of the bank accounts, after deduction of which, is bequeathed to the Methodist Episcopal Hospital. It is the contention of Mr. Fickling, the legatee under the " first " and " fourth " items, that this phrase should include his general legacy of $500, and also the debts, totaling $523.67. The hospital adopts the contrary view, maintaining that neither item is a proper deduction from its specific gift of the remainder of the bank account.

In its argument the hospital lays stress upon the inclusion in the residuary gift of the words " if any remains," arguing therefrom that it was testatrix's intention that the balance of her assets should be employed to the point of total exhaustion in satisfying the disputed items. This argument might carry some weight had it been demonstrated that at the time of the execution of the will the testatrix was in the same financial condition in which she was found to be at the time of her death, or, indeed, that she then possessed any appreciable value of assets aside from the Credit Corporation stock and the Lafayette bank account. No such showing has, however, been made, and no inference to that effect can be indulged, since it is a familiar principle of law that inferences of fact, sometimes loosely called presumptions (*Matter of Callahan,* 142 Misc. 28, 35, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524), do not run backward. (*Matter of Auditore,* 136 Misc. 664, 681; affd., 233 App. Div. 740; *Matter of Smith,* 136 Misc. 863, 871; *Matter of Tuozzolo,* 145 id. 485, 487, 488.) There is, therefore,

nothing in the record to indicate that at the time of the execution of the testamentary document the testatrix possessed any assets other than the Credit stock and the bank account.

Counsel for the hospital stresses the fact that "expenses" in relation to the administration of a decedent's estate has a well-defined legal meaning and refers merely to funeral and administration expenses and not to debts or general legacies. It may readily be assumed that both counsel and the court are aware of this alleged fact without the raising of any implication that the word carried a like implication to this lay testatrix.

It may be inferred from the fact that one of the assets enumerated in the account is a "School Death Fund" that testatrix was a school teacher. If so, it is much more likely that she would attach that meaning to words employed by her which is accepted in an ordinary dictionary rather than that adopted by the legal profession, where the two differ.

Referring to the Standard Dictionary published in 1930, the following definition of the word "expense" is found: " 1. (1) the laying out or expending of money or other resources, as time or strength; expenditure; hence drain on resources; detriment; loss; as, at the expense of health. (2) The habit of expending. 2. Money expended; outlay; charge; as, expenses for the journey." If almost any one of these meanings be adopted, it is apparent that the popular significance of "expenses" would far transcend the technical legal connotation of the term advocated on behalf of the hospital.

Which meaning should be attached to the word might be doubtful in spite of all this, however, were it not for the prefixing by the testatrix of the words "any and all other" before the word "expenses." It is primary that in the interpretation of any written document all words should be given effect if at all possible. (*Matter of Howells*, 145 Misc. 557, 562; *Matter of Schrier*, Id. 593, 597; *Matter of Reppucci*, Id. 671, 677, 678; *Matter of Leonard*, 143 id. 172, 180, 184, 185; *Matter of Sheffer*, 139 id. 519, 520; *Matter of Gargiulo*, 138 id. 90, 97; *Matter of Gorra*, 135 id. 93, 97.)

The construction advocated by the hospital would require the elimination of the word "other;" but "excision is a 'desperate remedy.' * * * It is 'only a last resort, to be availed of when all efforts to reconcile the inconsistency by construction have failed.'" (*Matter of Buechner*, 226 N. Y. 440, 443; *Adams* v. *Massey*, 184 id. 62, 69; *Van Nostrand* v. *Moore*, 52 id. 12, 20; *Matter of Kirkman*, 134 Misc. 527, 528; *Matter of McEvoy*, Id. 349, 352.) Here, the adoption of any such extreme expediency is unnecessary. The word can be given full effect in its signification by holding it

to refer to the payments the solution of which is directed in the " first " item of the will, which unquestionably involve " the laying out of money " within the connotation of the lay definition of " expense."

An additional argument in favor of this construction is that were the contention of the hospital to be sustained, the entire first item of the will would be rendered negatory, since the legatee thereunder also receives the residue of the estate.

The court is accordingly constrained to overrule this objection of the hospital and to determine that under the language of the will the debts, funeral and administration expenses and also the $500 legacy given in the " first " item are properly payable from the account in the Lafayette National Bank, only the overplus, after these deductions, being given to the hospital under the " third " item.

The third objection which is addressed to the manner of computation of commissions is, however, well taken. The gifts to the hospital are clearly specific legacies (*Matter of Baker*, 146 Misc. 437, 439; *Matter of Freeman*, 139 id. 301, 302, 304; *Matter of Smallman*, 138 Misc. 889, 897, 898), and upon their value the executor is entitled to no commissions (*Matter of Hurley*, 149 Misc. 68, 73; *Matter of Gavey*, 147 id. 332, 335; *Matter of Baker*, 146 id. 437, 438; *Matter of Terwilligar*, 142 id. 249, 254, 255; *Matter of Anable*, 139 id. 914, 918, 919).

Proceed accordingly.