In the Matter of the Estate of JOHN GEORGE FRANK, Deceased.

Surrogate's Court, Kings County, December 7, 1934.

*Hugh F. Kenna*, for August Schmidt, Sr.

*A. Lionel Levy*, for Christian Philip Frank.

WINGATE, S. It may readily be conceded that the instant will is an unusually horrible example of the dire effects attendant upon a failure to employ an experienced draftsman in the preparation of such a document. The court cannot, however, feel that the interpretation thereof is quite as hopeless a task as the unusually able memorandum of counsel for the son would indicate.

Certain intentions of the testator are entirely obvious, and it may promote clarity if the clauses expressing these are first eliminated from the document. Within this enumeration are the specific bequest of decedent's music, instruments, clothing and household belongings to his son, and the general legacies of $1,000 and $500 respectively to Antonette Brackett and Louis G. Hess.

With the removal of these items, the remainder of the will reads: " I also give him [the son] all the interest which is arrived from all my estates, during his life time, said interests are to be collected by The Title Guarantee & Trust Co. of No. 176 Broadway, New York City, for the benefit of my son, Christian Philip Frank. * * * In the event of my son Christian Philip Frank's death the remainder of my estate shall be divided unto " two sisters, a niece and two nephews, specifically named " said estate shall be equally divided among them, share & share alike, in the event any of the above heirs should die then it will be given to either there survivors."

Approaching first the intended gift to the son, it appears obvious that whatever was given to him, such benefit should be only for " his life time," and not outright. The contention of the attorney that a period should be substituted for the comma after estates, would not, in the opinion of the court, alter the meaning, since the son is expressly not given the outright title to this part of testator's property, but merely the " interest," which may be interpreted as income, and which, in itself, negatives any intent to give the principal. The subject-matter of the gift to the son is, therefore, a life interest in the " interest " or income " from all my estates."

The modes of possible effectuation of this life use of the portions of the estate not otherwise given, are potentially two in number: Either an outright life estate or a trust. Were the former alternative for effectuation adopted, it would render meaningless the words respecting the collection for the benefit of the son by the Title Guarantee and Trust Company so far as any pertinent demonstration in the record is concerned. It is argued that by the use of this phrase the testator had in mind merely the customary practice of collection and transmission of income on guaranteed mortgage certificates by the title company. To this there are two answers. The first is that there is no competent demonstration in the record that the testator possessed any investments of this type at the time he drew his will on May 5, 1930, which is the only pertinent time in any inquiry respecting his testamentary intent. (*Matter of Weil*, 151 Misc. 841, 848.) The account demonstrates that he had such, to the extent of a face value of $13,500,

at the date of his death, which occurred over thirty-nine months later, but this later fact is not probative of the former, since inferences do not run backward. (*Matter of Bates*, 152 Misc. 627, 628.) The second answer is that such an interpretation would do violence to the words employed. The direction is that " said interests " are to be collected. The " said " inevitably refers back to the previous word " all " in the phrase " *all* the interest which is arrived from all my estates." Mortgage certificates constituted only slightly more than half of the property left by the decedent. Unless this language is ignored, the theory advanced is untenable, and it is a primary rule of interpretation that, where possible, effect should be given to every portion of a formal document. (*Matter of Bates*, 152 Misc. 627, 629, and authorities cited.)

This effect can be given by determining that a trust of the entire remainder of the estate was created with Title Guarantee and Trust Company as the trustee thereof. It is of course well established that no set form of words is required for the creation of a trust, and that any declaration, by parol or in writing, and however informal, evidencing with sufficient clearness an intention to create a trust, will have that effect, and it may be implied from words and acts. (*Matter of Leverich*, 135 Misc. 774, 787; affd. on opinion of this court, 234 App. Div. 625.)

A trust being found to exist, the trustee is by law invested with the legal estate in the property subject thereto (Real Prop. Law, § 100) in so far as is requisite to enable it to perform the trust duties imposed upon it. (*Brown* v. *Richter*, 25 App. Div. 239, 243; *Pratt* v. *Prentice*, 166 id. 906, 907; affd., 221 N. Y. 707.)

The sole remaining question relates to the disposition of the remainder following the death of the son. Either this is given to the named remaindermen or their survivors, or an intestacy in respect thereto must result. The argument in favor of the latter is predicated almost entirely upon the introductory words of the remainder gift, " In the event of " the death of the son, it being argued therefrom that testator intended by this phrase to indicate his desire for the specified devolution only in case the son predeceased him.

Were the will the handwork of a skilled draftsman, some weight might be attached to the precise legal connotation of the words adopted; not so here. It is a natural inference from customary behavior that when a person has taken the trouble to make a will, he intends to dispose of his entire property thereby. (*Matter of McGowan*, 134 Misc. 409, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissman*, 137

Misc. 113, 119; affd., 232 App. Div. 698.) This inference is particularly patent in the present instance and must be given controlling effect. The court, therefore, interprets this to mean that the specified remainder gifts are to take effect upon the death of the son and the termination of his life estate. In view of the survivorship provision, the named individuals received, on the death of the testator, vested estates subject to divestment in the event that they, respectively, predeceased the life tenant. (*Matter of Davison*, 134 Misc. 769, 772, 773; affd. on opinion of this court, 230 App. Div. 867; *Matter of Myers*, 137 Misc. 868, 871, 872.)

Proceed accordingly.