In the Matter of the Estate of HARVEY NEBE, Deceased.

Surrogate's Court, Kings County, May 2, 1935.

*William K. Allison*, for the executor.

*Cullen & Dykman*, for the executrix of Adaline Nebe, deceased.

*John J. Kirby*, for the respondent.

*Thomas A. Kinsella*, special guardian.

WINGATE, S. The testator, the interpretation of whose will is here in question, died in June, 1901. He was survived by a widow, Adaline, but by no children or issue of deceased children or parents. His nearest blood relatives were a brother, John, and two sisters, Mary Pfeiffer and Elizabeth Balcom.

His will, which was duly admitted to probate in this court, gives internal evidence of experienced draftsmanship. The fourth item reads: " I give and bequeath to my wife all the household articles and furniture in my residence to be hers forever, and I give and devise to her the use of my house No. 187 Hooper Street, for and during her natural life, she to pay all taxes, assessments, water rates, insurance premiums and for necessary repairs thereon, and I direct that the provisions herein contained to and for my wife are and shall be in lieu of dower and all other interest and estate in the property of which I may die seized and possessed."

The remainder disposition of this parcel of realty was made by item seventh, which reads: " Upon the death of my wife I direct that my house and premises No. 187 Hooper Street, Brooklyn, shall be sold by my executor hereinafter named, and for that purpose I give and grant unto it full power and authority to sell the same in such manner and at such time as it may consider best for the interest of my estate and I direct that the proceeds, after paying all expenses, shall be divided among my legal heirs in manner as provided for by the Statute of Descent of the State of New York."

The widow, to whom the life estate in this property was devised, died in August, 1928. Prior to this date, testator's brother John had died, leaving no widow, but one child, who had also died leaving three children, all of whom are now living. Mary, one of testator's sisters, had also died, leaving four children, two of whom also predeceased, leaving children. Finally, testator's other sister had died, leaving five children, all of whom are living.

The questions of interpretation propounded concern the manner of devolution of the remainder of the real property. The *first* is as to whether the " legal heirs " of the testator, among whom the proceeds of the realty are to be divided on the sale after the death of the widow, are ascertainable as of the date of death of the testator, or as of that of the widow. *Second*, whether the widow is within the description of " legal heirs in manner as provided for by the Statute of Descent of the State of New York," and *third*, whether the language in the fourth item following the benefits bestowed upon the wife, namely, " the provisions herein contained to and for my wife are and shall be in lieu of dower and all other interest and estate in the property of which I may

die seized and possessed," is compatible with an intent that she should also receive a portion of the proceeds on the sale of the remainder interest in the property in which she was expressly given a life estate.

It is plain that the terms of the remainder direction come within the recognized definitions of a gift to a class, being " of an aggregate sum to a body of persons uncertain in number, at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number." (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 97; *Matter of Kimberly*, 150 id. 90, 93; *Matter of Russell*, 168 id. 169, 174; *Matter of Ackerman*, 137 Misc. 910, 915.)

It has been the substantially universally applied rule that benefits conferred upon " a class of persons vest in those who answer the description, and are capable of taking at the time of distribution." (*Teed* v. *Morton*, 60 N. Y. 502, 506; *Bisson* v. *W. S. R. R. Co.*, 143 id. 125, 139; *Matter of Allen*, 151 id. 243, 247; *Gilliam* v. *Guaranty Trust Co.*, 186 id. 127, 133; *Matter of Leonard*, 218 id. 513, 521; *Matter of Harned*, 138 Misc. 546, 548; affd., 234 App. Div. 796; *Matter of Morningstar*, 143 Misc. 620, 628, 629; *Matter of Fleishfarb*, 151 id. 399, 402; *Matter of Weil*, Id. 841, 850; *Matter of Lyons*, 154 id. 368, 371.)

The same result is attainable by application of the " pay and divide rule." In the testamentary direction at bar, there was no express gift of any part of the proceeds to be derived from the sale of the remainder interest which was directed after the widow's death. The executor was merely directed to divide the proceeds among the members of the class. Under such language the presumption is extremely strong that the testator intended that the benefit should not vest in the beneficiary until the time of payment arrives. (*Wright* v. *Wright*, 225 N. Y. 329, 336; *Smith* v. *Edwards*, 88 id. 92, 109; *Matter of Hopner*, 148 Misc. 748, 751; *Matter of Gurlitz*, 134 id. 160, 166.)

Turning now to the meaning of the descriptive designation of the class of persons among whom the remainder distribution is directed to be made, it is settled that " the word ' heirs ' is a legal term having a definite meaning, and expresses the relation of persons to a deceased ancestor * * *. Its primary import relates to the succession to real property." (*Cushman* v. *Horton*, 59 N. Y. 149, 151.) The class to whom the distribution under this will was directed was testator's " legal heirs * * * as provided for by the Statute of Descent of the State of New York."

The careful use of the words " heirs " and " devise " in connection with this devolution, as well as the reference to the " Statute of *Descent* " as distinguished from " distribution," clearly indicates that the class, the members of which the testator desired to benefit, was that which would receive his real property in case of his death intestate, since where words of art are employed in a will, obviously the product of expert draftsmanship, they are to be given their technical connotation. (*Matter of Corlies*, 150 Misc. 596, 598; affd., 242 App. Div. 703; *Matter of Frank*, 153 Misc. 688, 690; *Matter of Eger*, 139 id. 59, 61; *Matter of Fairchild*, 138 id. 363, 366; *Matter of Mann*, Id. 42, 50.) Both at the date of death of the testator and of the widow the latter was excluded from this category. (See Dec. Est. Law of 1909, §§ 81–97.)

Further than this, however, the testator, not content with this negative exclusion of the widow from any participation in the proceeds of the sale of the remainder interest, expressly stated that the bequests and the life estate given her under item fourth should not only be in full satisfaction of her rights of dower but also of " all other interest and estate in the property of which I may die seized and possessed." It is difficult to imagine how he could more clearly have expressed his intentions that she was to receive nothing beyond that which had expressly been given her by the terms of this item.

The effectuation of the contention of the executor of the widow would amount to a deletion from the will of the last quoted words. This is an extreme expedient which should never be adopted unless inescapable. (*Matter of Bates*, 152 Misc. 627, 629, and authorities cited.) It is presently not only unnecessary, but if done, would plainly be subversive of the obvious testamentary intent.

The interest of the widow in the realty terminated upon her death. The proceeds of the sale, when made, and any income received in the interval, belong to the descendants of the testator's brother and sisters in the proportions designated in the statutes in force at the date of the widow's death.

Enter decree on notice.